**In re SEALED CASE.**

No. 87–5256.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 3, 1987.

Decided Nov. 6, 1987.

N. Richard Janis, with whom Lawrence H. Wechsler and Clement R. Gagne, III, Washington, D.C., was on the brief for appellant.

Paul L. Friedman, with whom Lawrence E. Walsh, Washington, D.C., Guy Miller Struve, New York City, William T. Hassler and Jeffrey Toobin, Washington, D.C., were on the brief for appellee.

Before HARRY T. EDWARDS, BUCKLEY and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

The appellant in this matter is a witness in a grand jury investigation presided over by Independent Counsel Lawrence Walsh. The District Court empaneled the grand jury to investigate possible violations of United States law by persons secretly selling arms to Iran and providing assistance to the Nicaraguan Contras. The appellant ("Witness") appeals a decision of the District Court holding him in contempt for failure to comply with a subpoena *duces tecum* issued by the grand jury.

The subpoena in question directed the Witness to produce, in his capacity as "custodian," various documents pertaining to the operations of eight foreign companies with which he was allegedly associated and whose records he allegedly controls. The Witness contends that, because the subpoena was addressed to him in a representative capacity, the District Court erred in holding that the Independent Counsel need only establish that the court had personal jurisdiction over the Witness. We agree. The Independent Counsel must show that the District Court has personal jurisdiction over each of the companies whose records it seeks in order to obtain an order directing the Witness to comply with the subpoena. Because the Independent Counsel has not yet made the requisite showing, we reverse the District Court's order and remand for further consideration of the court's jurisdiction over the eight companies.

We further hold that, pursuant to the Supreme Court's decisions in *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), and *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed. 2d 552 (1984), the Witness may properly invoke his Fifth Amendment privilege in refusing to produce the subpoenaed documents if he can show that the testimonial implications of his production of the documents—*i.e.*, with respect to his alleged representative capacity, the existence or authenticity of the documents, or his possession or control of them—might tend to incriminate him. Once the Witness makes such a showing, the Independent Counsel is only entitled to an order requiring him to produce the subpoenaed documents if it can demonstrate that those possibly incriminatory facts to which the Witness would implicitly testify by producing the documents are a "foregone conclusion," or if the Independent Counsel grants the Witness use immunity with respect to the testimonial aspects of his production of the companies' records.

This case is under seal. In order to preserve the secrecy of the grand jury's investigation, we refrain from naming the Witness or the companies whose records have been subpoenaed.

## I. BACKGROUND

On January 28, 1987, the District Court empaneled a grand jury to investigate possible violations of United States law by Government officials and those who assisted them in surreptitiously selling arms to Iran and secretly funneling money and supplies to the Nicaraguan Contras. Two days later, the grand jury issued a subpoena to the Witness requiring the production of, *inter alia,* many of the documents whose disclosure is here at issue. The Independent Counsel was unable to serve the subpoena for several months due to the Witness' absence from the United States. After a mutually acceptable method of service was agreed upon, the grand jury issued a new subpoena *duces tecum* on April 30, 1987, and service was made the following day. The subpoena ordered the Witness, as "custodian" for eight foreign companies,[1] to produce certain documents on May 6. The order read:

> Bring with you any and all documents related to the business of the following corporations, including but not limited to corporate registration papers, incorporation papers, minutes of all meetings, financial records, bank account records, telephone records, personnel records, payroll records, and any record, note, memorandum or other document or thing associated with the business of [eight named foreign companies].

The Witness refused to comply with the subpoena. On May 6, 1987, the Independent Counsel filed a motion with the District Court to compel production of the requested documents. The Witness opposed the motion, contending that the sub-

poena suffered from five principal infirmities, any one of which would suffice to invalidate it. First, the Witness claimed that the District Court lacked personal jurisdiction over the eight companies, and that, because the Witness had been served in his representative capacity as "custodian" rather than in his individual capacity, personal jurisdiction over the companies was essential to render compliance mandatory. Second, the Witness argued that the Treaty on Mutual Assistance in Criminal Matters between the United States and Switzerland, May 25, 1973, United States–Switzerland, 27 U.S.T. 2019, T.I.A.S. No. 8302, furnished the sole avenue for obtaining at least some of the subpoenaed documents, and that more general notions of international comity precluded enforcement of a subpoena to obtain business records protected by the secrecy laws of other nations. Third, the Witness invoked the Fifth Amendment's privilege against compelled self-incrimination on the ground that the testimonial significance of his production of the documents—as opposed to the contents of the documents, with respect to which he asserted no privilege—might tend to incriminate him. Fourth, the Witness urged that the subpoena was impermissibly broad. Finally, the Witness challenged the legal authority of the Independent Counsel who had supervised the grand jury that had issued the subpoena.

The District Court granted the Independent Counsel's motion, rejecting all of the Witness' objections. *See In re Grand Jury Subpoena,* Misc. No. 87–0137 (D.D.C. July 10, 1987), *reprinted in* Joint Appendix ("J.A.") 76. The District Court first ruled

---

1. Although the Independent Counsel invariably refers to the eight entities as "corporations," and although the names of seven of them contain corporate designations, such as "Inc.", "Corp.", "Ltd.," or "S.A.," the Witness has generally declined to acknowledge that any one of the entities is in fact a corporation. *See* Brief of Appellant at 10 ("[The Independent Counsel] has taken it upon itself to designate [the Witness] as the 'custodian' of the foreign companies' records, labeled all of the companies as corporations...."); Memorandum of Points and Authorities in Opposition to Motion to Compel Production of Documents 8 n. 3 (May 15, 1987), *reprinted in* Joint Appendix ("J.A.") 14, 21 n. 3

("[The Witness] does not concede either the existence of the companies or that they are incorporated entities."). Notwithstanding stray references to the companies as "corporations," which might be construed as admissions, *see, e.g.,* Reply Brief of Appellant at 10, 14, the Witness has steadfastly refused to concede that he has any knowledge of the companies, including their organizational form. Because the corporate status of the companies has not been established, this opinion will refer to the eight entities as "companies," although for purposes of this court's legal analysis the distinction is inconsequential.

that it had jurisdiction to enforce the subpoena simply because it had personal jurisdiction over the Witness; whether it had personal jurisdiction over the companies the court deemed irrelevant. The court then held that the Treaty on Mutual Assistance in Criminal Matters did not preclude the issuance of a subpoena in this case. It did not address the Witness' related argument that international comity required the court to stay its hand. The District Court also rejected the Witness' Fifth Amendment claim, finding it to be based on a misreading of *Fisher* and *Doe.* The court held that under the collective-entity exception to the Fifth Amendment privilege against compelled self-incrimination, reaffirmed most recently by the Supreme Court in *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974), a custodian of a collective entity's documents could not assert a personal Fifth Amendment privilege to refuse to produce them in response to a subpoena. In the court's judgment, this rule survived *Fisher* and *Doe.* Because the Witness had been served as custodian for the companies whose records the Independent Counsel had demanded, the District Court decided that the Fifth Amendment did not excuse noncompliance. The court further adjudged the subpoena "clear in its demands and not unduly burdensome." J.A. 80. It upheld the authority of the Independent Counsel in another case decided that same day. *See In re Sealed Case,* 666 F.Supp. 231 (D.D.C.1987). The court therefore ordered the Witness to hand over the documents.

Pursuant to a stipulation of the parties entered into on July 17, 1987, and approved by the District Court on July 21, the return date for the subpoena was set for July 29, 1987. On July 28, the Witness informed the court that he would not comply with its order. Following a hearing on July 30, the District Court found the Witness in contempt pursuant to 28 U.S.C. §§ 1826 and 1784 (1982) for failure to produce the records requested in the subpoena or to cause an alternative custodian to produce

them. The court ordered the Witness confined for the life of the grand jury or until he complied with the District Court's order of July 10, 1987, unless the Witness sought an immediate appeal. The Witness filed a Notice of Appeal with this court on August 5, reiterating the five arguments he advanced in the trial court.

## II. ANALYSIS

### A. *Personal Jurisdiction*

The subpoena was issued to the Witness as a *representative* of the eight companies whose records the Independent Counsel wishes to obtain. As the District Court correctly noted in the Memorandum accompanying its Order of July 10, 1987, "[h]ad the corporations themselves been subpoenaed, clearly the Independent Counsel would have had to establish that the Court had *in personam* jurisdiction over them." J.A. 77. The Independent Counsel contends, however, that because the subpoena was addressed to the Witness as "custodian" for the companies, rather than to the companies themselves, and because the District Court unquestionably had personal jurisdiction over the Witness since he is a United States citizen, the Independent Counsel need not prove that the court had jurisdiction over the companies. The District Court agreed. Personal jurisdiction over a company's representative suffices, it held, to order compliance with a subpoena requesting production of the *company's* records, regardless of whether the company itself has any connection with the United States. J.A. 77.

The District Court's holding on this point is mistaken. By serving the Witness as "custodian" for the eight companies, the Independent Counsel has *for jurisdictional purposes* [2] effectively attempted to serve the companies themselves. The Independent Counsel must therefore demonstrate that the District Court has personal jurisdiction over each of the companies in order to secure a valid order directing the production of the companies' records. The

---

2. For Fifth Amendment purposes, the distinction between service on a company and service on an alleged custodian of the company is critical. *See* discussion in section II.B. & n. 9 *infra.*

mere fact that the court has jurisdiction over an alleged representative of the companies is patently insufficient to establish jurisdiction over the companies or to entitle the Independent Counsel to view company documents. Just as service of a subpoena *duces tecum* on a corporate officer vacationing in the United States would not allow the Independent Counsel access to corporate records absent proof that a United States court had jurisdiction over the corporation itself, service of a subpoena on the Witness as "custodian" for the companies cannot confer on the Independent Counsel a right to inspect their records unless it can show that the District Court possesses personal jurisdiction over them. The Independent Counsel has adduced no authority to the contrary.[3] The fact that the Witness is an American citizen, not just sojourning here, is also irrelevant to establishing jurisdiction over foreign companies. The Independent Counsel's repeated claim that the Witness has a "duty" to comply with the subpoena simply because he enjoys United States citizenship is utterly baseless as an assertion about our law.[4]

■ Under *International Shoe* and its progeny, a federal court has personal jurisdiction over a corporation or other business concern with respect to its activities or their effects within the United States only if that corporation has certain "minimum contacts" with the United States. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95

**3.** The Independent Counsel cites three cases for the proposition that personal jurisdiction over the individual served with a subpoena is enough to compel him to produce documents belonging to companies he represents. *See* Brief for Appellee Independent Counsel at 32–33. The Independent Counsel introduces those cases with the signal "*Cf., e.g.*" Here, however, even that notoriously enigmatic signal has been taxed beyond its limits. We view with profound disfavor the Independent Counsel's disingenuous attempt to enlist prior holdings in the service of doctrines they in no wise support.

*In re Grand Jury Proceedings (Bank of Nova Scotia)*, 740 F.2d 817 (11th Cir.1984), *cert. denied*, 469 U.S. 1106, 105 S.Ct. 778, 83 L.Ed.2d 774 (1985), involved a Canadian bank that did considerable business in the United States and that therefore plainly had the "minimum contacts" with this country to establish jurisdiction under *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The subpoena had been served on the bank itself, not on an individual who allegedly controlled its records, and the principal issue was whether the bank had to produce records from its office in the Cayman Islands when producing those records might subject it to liability there. It is hard to imagine what parallel the Independent Counsel purports to find between the Eleventh Circuit case and the present action. An analogy would exist were the Independent Counsel able to show that the Witness has done business in the United States on behalf of the companies sufficient to give an American court jurisdiction over them, but the Independent Counsel has not attempted to do so. Instead, it has bluntly asserted that the citizenship of a corporate agent suffices to authorize production of the corporation's records.

*In re Grand Jury Proceedings (Field)*, 532 F.2d 404 (5th Cir.), *cert. denied*, 429 U.S. 940, 97 S.Ct. 354, 50 L.Ed.2d 309 (1976), involved a nonresident alien (over whom the court unquestionably had personal jurisdiction) who was held in contempt for refusing to testify before a grand jury concerning transactions in the Cayman Islands that may have been part of a scheme to evade United States taxes, despite his having been granted immunity by the grand jury. The Fifth Circuit upheld the contempt order. The contemnor had not been subpoenaed as a representative of any business entity, whether domestic or foreign, the court's jurisdiction was not at issue, and the contemnor was not asked to produce any documents. Again, the analogy the Independent Counsel apparently sees is elusive.

The third case cited by the Independent Counsel—*First Nat'l City Bank v. IRS*, 271 F.2d 616 (2d Cir.1959), *cert. denied*, 361 U.S. 948, 80 S.Ct. 402, 4 L.Ed.2d 381 (1960)—is even further off point, for the IRS summons had there been served on an American bank, not one of its alleged agents, and the court found it unlikely that the bank would be subject to prosecution were it to produce records held at its Panamanian branch office.

**4.** The Independent Counsel relies on a single quotation plucked from *Blackmer v. United States*, 284 U.S. 421, 438, 52 S.Ct. 252, 255, 76 L.Ed. 375 (1932): "one of the duties which the citizen owes to his government is to support the administration of justice by attending its courts and giving his testimony whenever he is properly summoned." This citation provides no support for the Independent Counsel's position. Unlike *Blackmer*, which upheld fines imposed for refusal to obey a subpoena directing an American citizen to return from abroad to testify as a witness for the Government at a criminal trial, this case involves possibly self-incriminatory testimonial admissions, and the documents requested by the Independent Counsel have not, as our discussion of personal jurisdiction makes clear, been "properly summoned."

(1945). In the case of foreign companies that do not regularly do business here, jurisdiction may be founded on conduct abroad that causes injury within the United States. As this court noted three years ago, "It has long been settled law that a country can regulate conduct occurring outside its territory which causes harmful results within its territory." *Laker Airways v. Sabena, Belgian World Airlines,* 731 F.2d 909, 922 (D.C.Cir.1984).

■ Although the District Court *might* therefore have personal jurisdiction over the companies, the Independent Counsel has not carried its burden of proving the effects necessary to establish such jurisdiction. At one point in its brief, the Independent Counsel alleges that "the Court here has jurisdiction over the companies in question, both by virtue of the impact the corporations' foreign actions have had on the United States, and by virtue of the companies' conduct within the United States." Brief for Appellee Independent Counsel at 34. The Independent Counsel, however, never specifies those actions by the companies that occurred within the United States or whose effects were felt here that it believes sufficient to establish jurisdiction. It merely suggests—erroneously—that the burden of proving that jurisdiction does not exist shifts to the Witness once the Independent Counsel has alleged that it does. *See* Brief for Appellee Independent Counsel at 34 n. 20. For his part, the Witness has persistently denied that "minimum contacts" obtain between the United States and the companies whose records have been subpoenaed. *See, e.g.,* Brief of Appellant at 9, 13–14. Until the Independent Counsel has made the jurisdictional showing it claims it is prepared to make, it may not obtain a court order enforcing its subpoena.

■ Nothing precludes the Independent Counsel from proving that jurisdiction exists by means of *ex parte* submissions for *in camera* review if such submissions are necessary to preserve the secrecy of the grand jury's proceedings. *See Marc Rich & Co. v. United States,* 707 F.2d 663, 670 (2d Cir.), *cert. denied,* 463 U.S. 1215, 103

S.Ct. 3555, 77 L.Ed.2d 1400 (1983). Should the District Court decide, however, that the Independent Counsel has made an adequate showing based on *ex parte* submissions, then it should so inform the Witness and allow the Witness to challenge that showing by submitting opposing evidence.

■ In order to establish jurisdiction for purposes of enforcing a grand jury subpoena, the Independent Counsel need not prove what would be necessary to confer jurisdiction over the companies for purposes of trial. As the Third Circuit has noted, so stringent a requirement "might well invert the grand jury's function, requiring that body to furnish answers to its questions before it could ask them." *In re Grand Jury Proceedings (Harrisburg Grand Jury 79–1),* 658 F.2d 211, 214 (3d Cir.1981). A lower hurdle is appropriate. We join the Second Circuit in adopting the following test: "if the [Independent Counsel] shows that there is a reasonable probability that ultimately it will succeed in establishing the facts necessary for the exercise of jurisdiction, compliance with the grand jury's subpoena may be directed." *Marc Rich,* 707 F.2d at 670.

The record does not indicate whether the grand jury is investigating possible violations of United States law by the Witness, the companies, or both. Nor has the Independent Counsel disclosed the types of infractions it believes may have been committed. In the absence of this information, we are unable to describe with any precision the quantity or quality of evidence that the Independent Counsel must produce in order to prevail. We decline to speculate on a wide range of hypothetical cases. We merely note in passing that the evidence contained in the *ex parte* Affidavit of William Hassler ("Hassler Affidavit"), standing alone, falls far short of the quantum of evidence necessary to establish jurisdiction over *any* of the eight companies.

### B. *Fifth Amendment Privilege*

■ An artificial legal entity, such as a corporation, possesses no Fifth Amendment privilege against compelled self-incrimination. *See, e.g., Bellis v. United*

*States,* 417 U.S. 85, 90, 94 S.Ct. 2179, 2184, 40 L.Ed.2d 678 (1974); *Hale v. Henkel,* 201 U.S. 43, 74–75, 26 S.Ct. 370, 378–79, 50 L.Ed. 652 (1906): Because such an entity may not decline to testify by invoking the Fifth Amendment, "an individual cannot rely upon the privilege to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally." *Bellis,* 417 U.S. at 88, 94 S.Ct. at 2183. The Supreme Court has found it "well settled that no privilege can be claimed by the custodian of corporate records, regardless of how small the corporation may be." *Bellis,* 417 U.S. at 100, 94 S.Ct. at 2189. Moreover, it is *not* the case that "examination of ... Supreme Court 'collective entity' cases discloses that in each instance the Court's decision that the records of the corporation were not privileged and had to be produced was based on the authority of the State effectively to regulate the corporation's exercise of State-granted privileges." Brief of Appellant at 13. In *Bellis,* the Supreme Court rejected this claim in no uncertain terms:

> To some extent, [early twentieth century] decisions were based upon the particular incidents of the corporate form, the Court observing that a corporation has limited powers granted to it by the State in its charter, and is subject to the retained "visitorial power" of the State to investigate its activities.... But any thought that the principle formulated in these decisions was limited to corporate records was put to rest in *United States v. White,* [322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed.2d 1542 (1944)].... *White* announced the general rule that the privilege could not be employed by an individual to avoid production of the records of an organization, which he holds in a representative capacity as custodian on behalf of the group.

*Bellis,* 417 U.S. at 89, 94 S.Ct. at 2183.

■ Contrary to the Witness' claim, the fact that the companies whose records are sought have not been organized or licensed under the laws of any of the United States does not bar application of the collective-entity exception to them, any more than

would the fact (if indeed it is one) that the companies are not corporations. The reason the Fifth Amendment may not be invoked by corporations or some more inclusive class of collective entities is not that they are creatures of the State; rather, collective entities, regardless of their location or state of incorporation, are artificial entities falling outside the privilege's "historic function of protecting only the natural individual from compulsory incrimination." *Bellis,* 417 U.S. at 89, 94 S.Ct. at 2184 (quoting *United States v. White,* 322 U.S. 694, 701, 64 S.Ct. 1248, 1252, 88 L.Ed. 1542 (1944)). Moreover, as the Court has noted, "[w]here the preparation of business records is voluntary, no compulsion is present." *United States v. Doe,* 465 U.S. 605, 610, 104 S.Ct. 1237, 1241, 79 L.Ed.2d 552 (1984). Therefore, neither a collective entity nor its representatives may refuse to comply with a subpoena *duces tecum* on the ground that the *contents* of any documents produced in response to it might tend to incriminate them.

A collective entity is also unable to use the Fifth Amendment to shield it from the possibly incriminating implications of its *production* of subpoenaed documents. The question this case presents is whether an alleged custodian of a collective entity's records may properly invoke his Fifth Amendment privilege to excuse his noncompliance with a subpoena requesting those records on the ground that the very act of producing them might tend to incriminate *him.*

In *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), an IRS summons sought the production of records prepared for a taxpayer by his accountant. The Court held that, although the taxpayer could not himself have invoked his Fifth Amendment privilege to excuse noncompliance (had the summons been issued to him rather than to his attorney) because the records contained no testimonial declarations by the taxpayer, the Fifth Amendment might apply to his act of producing the records, whether he made them available personally or through his lawyer.

The act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, wholly aside from the contents of the papers produced. Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer. It also would indicate the taxpayer's belief that the papers are those described in the subpoena. *Curcio v. United States,* 354 U.S. 118, 125 [77 S.Ct. 1145, 1150, 1 L.Ed.2d 1225] (1957). The elements of compulsion are clearly present, but the more difficult issues are whether the tacit averments of the taxpayer are both "testimonial" and "incriminating" for purposes of applying the Fifth Amendment. These questions perhaps do not lend themselves to categorical answers; their resolution may instead depend on the facts and circumstances of particular cases or classes thereof.

*Fisher,* 425 U.S. at 410, 96 S.Ct. at 1581.

The Court held in *Fisher* that the taxpayer's act of producing the records prepared by his accountant would not be either sufficiently testimonial or sufficiently self-incriminatory to qualify for Fifth Amendment protection. It found compliance with the summons to be inadequately *testimonial* because "[t]he existence and location of the papers are a foregone conclusion and the taxpayer adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers." *Id.* at 411, 96 S.Ct. at 1581.[5] The Court further ruled that even if production of the records had "some minimal testimonial significance" in this regard, it would not pose "any realistic threat" of *self-incrimination* because it was not illegal to have accountants prepare one's tax records. *Id.* at 412, 96 S.Ct. at 1581. The Court also held that, because the taxpayer had not prepared the records himself, he could not authenticate them, and thus could not add to the case against him on this score by producing them. *Id.* at 413.

The Court elaborated *Fisher*'s "act-of-production" doctrine in *Doe.* In that case, a federal grand jury investigating corruption in the awarding of county and municipal contracts issued five subpoenas to the owner of several sole proprietorships, demanding production of certain business records of his companies. The Court held that the Government could only order him to produce the documents if it granted him use immunity with respect to the testimonial aspects of his act of producing the documents, because that act would involve testimonial self-incrimination. Without even mentioning its distinction in *Fisher* be-

---

**5.** In his concurrence, Justice Brennan disagreed:

> I know of no Fifth Amendment principle which makes the testimonial nature of evidence and, therefore, one's protection against incriminating himself, turn on the strength of the Government's case against him.

*Fisher,* 425 U.S. at 429, 96 S.Ct. at 1589–90 (Brennan, J., concurring in the judgment). Justice Brennan concluded, however, that notwithstanding the testimonial significance of taxpayers' production of their records, the implicit testimony they would furnish in these consolidated cases would not tend to incriminate them because they had already stipulated that the records existed and that those records matched the descriptions contained in the subpoenas. *Id.* at 430 n. 9, 96 S.Ct. at 1590 n. 9.

The difference between Justice Brennan's view and that of the majority seems largely semantic. Whether the strength of the Government's evidence determines the protection to be accorded the act of producing entity documents because it diminishes the act's testimonial value or because it lessens its self-incriminating character is of little moment, so long as the substantive threshold for protection remains the same. Justice Brennan, to be sure, seems to dispute this functional conflation of views, declaring, with respect to the possibly incriminating nature of the taxpayers' implicit authentication of the documents, that "the protection against self-incrimination cannot … turn on the strength of the Government's case." *Id.* at 429, 96 S.Ct. at 1590. It is difficult, however, to square this isolated statement with Justice Brennan's result, since the taxpayers' prior admissions appear to have been decisive for him only because they sealed the Government's case with respect to those issues. The substantive equivalence of the two views is further evidenced by the fact that Justice Brennan did not take issue with the majority's reiteration of *Fisher*'s "foregone conclusion" test in *Doe,* 465 U.S. at 614 n. 13, 104 S.Ct. at 1243 n. 13, where the majority did not link the strength of the Government's case to the testimonial rather than the incriminatory character of the act of producing subpoenaed documents.

tween the extent to which the act of producing records would be testimonial and the extent to which it might incriminate the person selecting and turning over the requested documents, the Court affirmed and applied *Fisher*'s "foregone conclusion" standard. After approving the Third Circuit's finding that "nothing in the record ... indicate[s] that the United States knows, as a certainty, that each of the myriad documents demanded by the five subpoenas in fact is in the appellee's possession or subject to his control," 465 U.S. at 613 n. 12, 104 S.Ct. at 1243 n. 12 (quoting *In re Grand Jury Empanelled March 19, 1980*, 680 F.2d 327, 335 (3d Cir.1982)), the Court went on to explain its holding:

> Respondent did not concede in the District Court that the records listed in the subpoena actually existed or were in his possession. Respondent argued that by producing the records, he would tacitly admit their existence and his possession. Respondent also pointed out that if the Government obtained the documents from another source, it would have to authenticate them before they would be admissible at trial. See Fed.Rule Evid. 901. By producing the documents, respondent would relieve the Government of the need for authentication. These allegations were sufficient to establish a valid claim of the privilege against self-incrimination. This is not to say that the Government was foreclosed from rebutting respondent's claim by producing evidence that possession, existence, and authentication were a "foregone conclusion." *Fisher*, 425 U.S., at 411 [96 S.Ct. at 1581]. In this case, however, the Government failed to make such a showing.

*Doe*, 465 U.S. at 614 n. 13, 104 S.Ct. at 1243 n. 13.

■ The parallels between *Doe* and this case are striking. The Witness also refuses to concede that the documents sought by the Independent Counsel exist, let alone that he possesses them. He, too, insists on putting the Independent Counsel to the test of authenticating the documents and proving his familiarity with, and role in, the transactions they record. In addition, the Witness argues that the subpoena's demand for everything "associated with the business" of the eight companies would operate as an interrogatory, requiring him to use—and disclose—his personal knowledge of the companies' activities. Because many of those activities were allegedly covert and illegal, the Witness would, he claims, be required to incriminate himself by selecting and implicitly authenticating those documents that meet the terms of the subpoena. *See* Brief of Appellant at 44–45. More important still, the Witness contests the Independent Counsel's assertion that he is in fact a custodian of the companies' records—the essential precondition for commencing the analysis outlined in *Fisher* and *Doe*. The Witness therefore has a powerful *prima facie* claim to the Fifth Amendment's protection.

The question is whether such a claim can have merit in light of the long line of cases from *Hale v. Henkel*, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906), to *Bellis* denying Fifth Amendment protection to collective entities and to their custodians when asked to produce documents belonging to those entities. We hold that it can. The fact that *Fisher* involved individual taxpayers and *Doe* involved a sole proprietorship does not preclude or even militate against application of the principles they announced to cases involving subpoenas issued to custodians of collective entities, particularly where the fact of custodianship is itself at issue. As the Third Circuit recently said,

> [*Fisher* and *Doe*] make the significant factor, for the privilege against self-incrimination, neither the nature of the entity which owns documents, nor the contents of documents, but rather the communicative or noncommunicative nature of the arguably incriminating disclosures sought to be compelled.

*In re Grand Jury Matter (Brown)*, 768 F.2d 525, 528 (3d Cir.1985) (en banc) (footnotes omitted).

In *Bellis*, 417 U.S. at 100, 94 S.Ct. at 2189, the Court held that no collective entity, however small, enjoys a Fifth Amendment privilege. In *Doe*, the Court implicitly reaffirmed the vitality of *Bellis*, *see* 465

U.S. at 608, 104 S.Ct. at 1239, and held that, for purposes of the Fifth Amendment privilege, there is no difference between the voluntarily prepared business records of a corporation and those of an unincorporated proprietorship, 465 U.S. at 610–12, 104 S.Ct. at 1241–42. In *Bellis*, however, the Supreme Court, relying on *White*, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944), also rejected the claim that the *formal* distinction between a corporation and other business entities, or the fact that the State retained "visitorial" powers with respect to corporations, was at all relevant to assertions of Fifth Amendment privilege. 417 U.S. at 89, 94 S.Ct. at 2183. So if neither the formal distinction between corporations and common-law modes of conducting business, nor the content of voluntarily prepared business records that either keeps, is of significance in the context of Fifth Amendment claims, then the Independent Counsel's argument here can find no reasonable foundation in the Court's current precedent. In other words, the "act-of-production" doctrine set forth in *Fisher* and *Doe* must be held to apply to attempts to compel custodians of collective entities to produce documents they officially control.

The principal reason for denying collective entities a Fifth Amendment privilege, and for forbidding representatives of those entities from invoking their personal privilege when an entity's documents are sought, is that the State's investigatory power "would be seriously embarrassed, if not wholly defeated in its effective exercise, if guilty officers could refuse inspection of records and papers of the corporation." *Wilson v. United States*, 221 U.S. 361, 384–85, 31 S.Ct. 538, 546, 55 L.Ed. 771 (1911). As the Court said in *White*, "evidence of wrongdoing by an organization or its representatives is usually to be found in the official records and documents of that organization. Were the cloak of the privilege to be thrown around these impersonal records and documents, effective enforcement of many federal and state laws would be impossible." *White*, 322 U.S. at 700, 64 S.Ct. at 1252. After *Doe*, however, an individual custodian could not impede investi-

gation of possible criminal actions by a collective entity or its representatives by using his Fifth Amendment privilege to prevent the Government from introducing the *contents* of an entity's documents into evidence against them. And permitting a custodian to invoke the Fifth Amendment to decline to produce such documents himself would not keep them from the prosecutor's hands, because collective entities, having no privilege of their own, would have to comply with a subpoena addressed *to them* by finding *someone* to produce whatever records were sought. Thus, even when the "act-of-production" doctrine is extended to representatives of collective entities, the collective-entity exception to the Fifth Amendment privilege retains its vitality and accomplishes the purposes for which it was created. *See Note, Fifth Amendment Privilege for Producing Corporate Documents*, 84 MICH.L.REV. 1544, 1564–73 (1986).

We find it significant that in *Doe* the Supreme Court, while tacitly approving the Third Circuit's holding that "an individual may not assert the Fifth Amendment privilege *on behalf of* a corporation, partnership, or other collective entity under the holding of *Bellis*," 465 U.S. at 608, 104 S.Ct. at 1240 (emphasis added), did not expressly limit its statement of the "act-of-production" doctrine to individuals or sole proprietors, nor did it deny that custodians of collective entities could invoke the privilege *on behalf of themselves*. Instead, the Court restated the doctrine in the broadest possible terms, holding unqualifiedly that "[a] government subpoena compels the holder of the document to perform an act that may have testimonial aspects and an incriminating effect." 465 U.S. at 612, 104 S.Ct. at 1242. In the absence of any pragmatic reason or any explicit directive from the Supreme Court to limit the "act-of-production" doctrine to individuals acting in a nonrepresentative capacity, we decline to do so.

Prior Supreme Court decisions delimiting the collective-entity exception are not to the contrary. The Court has, to be sure, "time and again allowed subpoenas against the

custodian of corporate documents or those belonging to other collective entities ... over claims that the documents will incriminate the custodian despite the fact that producing the documents tacitly admits their existence and their location in the hands of their possessor." *Fisher,* 425 U.S. at 411–12, 96 S.Ct. at 1581. But in only two of the cases cited by the majority in *Fisher*—*Dreier v. United States,* 221 U.S. 394, 31 S.Ct. 550, 55 L.Ed. 784 (1911), and *Bellis*—was the subpoena issued to a custodian in his representative capacity rather than to a collective entity,[6] and in none of the cases cited was the custodianship of the person who refused to produce subpoenaed documents, let alone the existence of those documents or their possession or control by the custodian, even remotely in issue. In each of those cases, an admitted custodian attempted to invoke his personal Fifth Amendment privilege to prevent the Government from obtaining entity records whose *contents* might have proven incriminating; the possibly incriminatory effect of the custodian's act of producing the documents was never considered, apparently because the points to which the custodian would implicitly have testified were already well established. Indeed, the majority opinion in *Fisher* appears to construe the Court's earlier decisions in precisely this way; immediately after citing these cases, the opinion says: "The existence and possession or control of the subpoenaed documents being no more in issue here [in *Fisher* ] than in the above cases, the summons is equally enforceable." 425 U.S. at 412, 96 S.Ct. at 1581. The implication appears to be that when existence and possession or control *are* at issue, a custodian *may* invoke his Fifth Amendment privilege with respect to his act of producing them, just as an individual may invoke it if served with a subpoena in a nonrepresentative capacity.

We recognize that, in *White,* the Court once endorsed the notion that representatives of a collective group "assume the rights, duties, and privileges of the artificial entity or association of which they are agents or officers and they are bound by its obligations," so that "[i]n their official capacity ... they have no privilege against self-incrimination." 322 U.S. at 699, 64 S.Ct. at 1251. Thirteen years later, however, the Court retreated from this view, at least with respect to compelled oral testimony. A unanimous Court held that "[t]here is no hint in [earlier cases] that a custodian of corporate or association books waives his constitutional privilege as to oral testimony by assuming the duties of his office." *Curcio v. United States,* 354 U.S. 118, 124, 77 S.Ct. 1145, 1150, 1 L.Ed.2d 1225 (1957). *Curcio* did not itself extend this holding to include the testimonial implications of the act of production as well as speech, but by putting speech and production on a par for Fifth Amendment purposes, *Fisher* and *Doe* perforce accomplished that extension.

We therefore see no reason to withhold the privilege from representatives of collective entities.[7] However, even if one accepted the abandoned thesis that an entity's custodian discards his Fifth Amendment rights upon assuming office, one could not rush to a decision in the case before us. For in this case the Witness steadfastly refuses to acknowledge that he is a custodian of the eight companies whose records the Independent Counsel has requested. The Independent Counsel would still have

---

6. In *Bellis,* the custodian was served personally because the law firm in which he had been a partner had dissolved, and he had denied the other former partners access to the law firm's records. *See* 417 U.S. at 99, 94 S.Ct. at 2188.

7. In addition to the Third Circuit, *see Brown,* 768 F.2d at 525, both the Second and the Fourth Circuits have adopted this view. *See United States v. Lang,* 792 F.2d 1235, 1240–41 (4th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 574, 93 L.Ed.2d 578 (1986); *In re Two Grand Jury Subpoenae Duces Tecum,* 769 F.2d 52, 57 (2d Cir.

1985). The Sixth and Eighth Circuits have rejected it in name though not in substance, since both circuits automatically confer use immunity on a collective entity's custodian with respect to the testimonial implications of his act of producing entity documents. *See In re Grand Jury Subpoena (85–W–71–5),* 784 F.2d 857, 861 (9th Cir.1986), *cert. dismissed,* — U.S. ——, 107 S.Ct. 918, 93 L.Ed.2d 18 (1987); *In re Grand Jury Proceedings (Morganstern),* 771 F.2d 143, 148 (6th Cir.) (en banc), *cert. denied,* 474 U.S. 1033, 106 S.Ct. 594, 88 L.Ed.2d 574 (1985).

to establish that the Witness is indeed a custodian before it could compel him to furnish the subpoenaed documents.

The *Doe* Court appeared unanimous in requiring that the Government show, in order to block a claim of privilege, that it is a "foregone conclusion" that it would be able to prove at trial by independent evidence any possibly incriminatory facts to which an alleged custodian might implicitly testify by complying with a subpoena addressed to him or to the entity he supposedly represents. *See Doe*, 465 U.S. at 614 n. 13, 104 S.Ct. at 1243 n. 13; *Fisher*, 425 U.S. at 411, 96 S.Ct. at 1581. Unfortunately, *Fisher* and *Doe* shed little light on how this abstract test should be applied. In *Fisher*, the Supreme Court found the existence and location of the taxpayers' records a "foregone conclusion," but it could hardly have reached the opposite result inasmuch as the taxpayers had already *admitted* those points. *See* 425 U.S. at 430 n. 9, 96 S.Ct. at 1590 n. 9 (Brennan, J., concurring in the judgment). In *Doe*, the Court simply announced that the Government had failed to make the requisite showing, without saying what evidence the Government had adduced of possession, existence, or authenticity, and without specifying those additions that would have been necessary to establish each of these facts as a "foregone conclusion."

The Supreme Court has also provided conflicting guidance as to the extent to which incrimination must be likely in order to justify noncompliance with a subpoena on Fifth Amendment grounds. In *Fisher*, the Court said that so long as production poses no "realistic threat" of incrimination, compliance may be required. 425 U.S. at 412, 96 S.Ct. at 1581. In *Doe*, the Court held that in order to invoke the Fifth Amendment, one must be " 'confronted by substantial and "real," ' and not merely trifling or imaginary, hazards of incrimination.' " 465 U.S. at 614 n. 13, 104 S.Ct. at 1243 n. 13 (quoting *Marchetti v. United States*, 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968)). In other cases, however, the Court has apparently favored a less exacting requirement for appeals to the Fifth Amendment. For example, in

*Hoffman v. United States*, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951), the Court held that an individual may justifiably claim the protection of the Fifth Amendment unless it is " 'perfectly clear, from a careful consideration of all the circumstances in the case, that ... the answer[s] *cannot possibly* have such tendency' to incriminate." *Id.* at 488, 71 S.Ct. at 819 (quoting *Temple v. Commonwealth*, 75 Va. 892, 898 (1881) (emphasis in original)); *accord Malloy v. Hogan*, 378 U.S. 1, 12, 84 S.Ct. 1489, 1495, 12 L.Ed.2d 653 (1964). The Supreme Court also has noted in passing that "[t]he burden of overcoming an assertion of the Fifth Amendment privilege ... is one which prosecutors would rarely be able to meet in the early stages of an investigation," *Zurcher v. Stanford Daily*, 436 U.S. 547, 562 n. 8, 98 S.Ct. 1970, 1979 n. 8, 56 L.Ed.2d 525 (1978), but general remarks of this sort are often of little use in concrete cases.

 Whatever the precise contours of the "foregone conclusion" test (whether it encompasses or operates in coordination with the incrimination test), its application to the case now before us is comparatively simple. At a minimum, under even the most narrow reading of *Fisher* and *Doe* from the perspective of a collective entity's representative, the Independent Counsel must prove that it possesses admissible evidence sufficient to render it a "foregone conclusion" that the person served in a representative capacity is in fact a custodian of the collective entity whose record it seeks. The Independent Counsel has not yet offered such proof with respect to the Witness' alleged custodial relationship to the eight companies. The only evidence it has adduced of the Witness' alleged links to the companies is contained in the *ex parte* Hassler Affidavit, and that affidavit, if given credence, only ties the Witness to three of the eight companies by way of a single uncorroborated assertion by an unnamed source, while offering scant additional proof of his connections to three others. The statements in that affidavit do not claim, let alone purport to show, that the Witness is *presently* in control of the

documents of any of the companies or that he maintained any contact with the companies after their formation and initial activities. Nor can the Independent Counsel rely on the Witness' testimony and alleged document production before Congressional committees investigating the Iran/Contra affair to carry its burden, because the Witness was granted use immunity with respect to his testimony and his production of documentary evidence. Finally, as the Witness points out, *see* Reply Brief of Appellant at 6–7, the public testimony on which the Independent Counsel relies not only fails to establish that the Witness currently controls the documents, but is tainted by virtue of its explicit references to and implicit reliance upon the Witness' immunized testimony. By any measure that might reasonably be extracted from Supreme Court precedents, the Independent Counsel's offer of proof is woefully inadequate. The Independent Counsel has no title to the order it seeks until it establishes, under the "foregone conclusion" standard, that the Witness is presently a custodian of each of the eight companies named in the subpoena.

The Independent Counsel may attempt to prove that the Witness is a custodian or, having established that fact, that his possession or control of the companies' records, or the genuineness or existence of those records, is either a "foregone conclusion" or not incriminatory by means of *ex parte* submissions for *in camera* review by the trial court if such submissions are necessary to preserve the secrecy of the grand jury's proceedings. *See, e.g., Marc Rich,* 707 F.2d at 670; *In re John Doe Corp.,* 675 F.2d 482, 489–91 (2d Cir.1982). However, if the Independent Counsel adduces sufficient evidence to prove one or more of these facts, then the District Court should so inform the Witness and allow opposing submissions. It seems clear that any submissions that the Witness makes in challenging the Independent Counsel's evidence

may not be used against him at trial, either as part of the Government's case-in-chief or for purposes of impeachment. The District Court's finding that some contested proposition is a "foregone conclusion" does not, of course, relieve the Government of its burden of establishing that proposition at trial.[8]

 If the Independent Counsel fails to prove that the Witness' custodianship is a "foregone conclusion," or if it succeeds on this score but not with respect to some other testimonial aspect of production, then two courses lie open to it if it still wishes to compel production of the records it seeks. First, the Independent Counsel might grant the Witness use immunity limited to the testimonial significance of the act of production itself and request an order compelling him to comply with the subpoena. *See Doe,* 465 U.S. at 614–17, 104 S.Ct. at 1243–45. As the Court emphasized in *Doe,* a formal grant of use immunity alone suffices in these circumstances; an informal, judicially created "exclusionary rule" that would bar introduction at trial of testimonial evidence or inferences therefrom would not be satisfactory. The Court was unequivocal:

> We are urged to adopt a doctrine of constructive use immunity. Under this doctrine, the courts would impose a requirement on the Government not to use the incriminatory aspects of the act of production against the person claiming the privilege even though the statutory procedures [for granting immunity] have not been followed.
>
> We decline to extend the jurisdiction of courts to include prospective grants of use immunity in the absence of the formal request that the statute requires.

*Doe,* 465 U.S. at 616, 104 S.Ct. at 1244.

The Independent Counsel's second option would be to issue subpoenas to the eight companies rather than to the Witness *qua*

---

**8.** If, moreover, the Government attempts to introduce at trial the Witness' production of the companies' records to prove the existence or authenticity of the documents or his possession or control of them, instead of introducing independent evidence to the same effect, then the

Witness may presumably once again raise his Fifth Amendment privilege and contest whatever evidence the Government proffers to show that what the Witness implicitly acknowledged by producing the documents was either a "foregone conclusion" or not incriminatory.

custodian. As we have indicated, the jurisdictional requirements would be identical in these two cases. Because a collective entity possesses no Fifth Amendment privilege, the companies could not refuse to produce subpoenaed documents on the ground that those documents or the act of producing them would subject them or any natural person to criminal liability. *See, e.g., Wilson,* 221 U.S. at 376, 31 S.Ct. at 542; *In re Two Grand Jury Subpoenae Duces Tecum,* 769 F.2d 52, 57 (2d Cir.1985); *United States v. G & G Advertising Co.,* 762 F.2d 632, 634–35 (8th Cir.1985).[9]

Compelling the Independent Counsel to resort to one of these two options in collective-entity cases would not, we repeat, markedly frustrate the Government's investigation of possible criminal offenses or its enforcement of criminal provisions.[10] Rather, resort to these options merely ensures the Fifth Amendment its proper scope, in light of Supreme Court constructions of the privilege against compelled self-incrimination.

### C. *The Witness' Remaining Objections*

In his brief, the Witness challenges the legal authority of the Independent Counsel, primarily by reference to arguments advanced by Lt. Col. Oliver North in a similar action. *See* Brief of Appellant at 45–48. Those arguments were laid to rest by this court's decision in *In re: Sealed Case,* 829 F.2d 50 (D.C.Cir.1987), which upheld the Independent Counsel's authority to conduct the present investigation pursuant to his appointment by the Attorney General.

The Witness' additional claim that "the Independent Counsel Provisions of the Ethics in Government Act are inapplicable on their face" to him, Brief of Appellant at 46, is beside the point, given the validity of the Attorney General's delegation of broad investigatory powers to the Independent Counsel. The Witness' second additional contention is that unless the Independent Counsel is removable at will by the Attorney General, this court must decide the constitutionality of the Independent Counsel's appointment under the Ethics in Government Act. Because this court has ruled that the Attorney General may remove the Independent Counsel at will by rescinding the regulation creating his office, so long as generally applicable procedural requirements are met, *see In re: Sealed Case,* 829 F.2d 56 & n. 33, 60–63, this court, by the Witness' own admission, need not reach the question whether the Independent Counsel's appointment under the Ethics in Government Act is constitutionally adequate.

The Witness also contends that the subpoena is overly broad, in violation of the Fourth Amendment. *See* Brief of Appellant at 43–45. We see no merit in this claim. The Supreme Court has held that the Fourth Amendment requires "specification of the documents to be produced adequate, but not excessive, for the purposes of the relevant inquiry. Necessarily, as has been said, this cannot be reduced to formula; for relevancy and adequacy or excess in the breadth of the subpoena are matters variable in relation to the nature, purposes and scope of the inquiry." *Oklahoma Press Publishing Co. v. Walling,*

---

**9.** The Independent Counsel contends that, just as a collective entity would be obliged to find *some* representative to produce subpoenaed documents, so too the Witness must either find an alternative custodian to hand over the documents or do so himself, at whatever risk that would entail. *See* Brief of Appellee Independent Counsel at 10–11 & n. 7, 29. The Independent Counsel's assertion is misguided. A collective entity must find some means by which to comply because no Fifth Amendment defense is available to it. By contrast, a custodian *does* enjoy the Fifth Amendment's protection, and need only invoke it to absolve himself of any obligation to comply. It is up to the Independent Counsel to find an alternative custodian or

to serve the companies directly, in part because a custodian's appointment of an alternative representative might itself bolster the evidence against him.

**10.** *See* Note, *Fifth Amendment Privilege for Producing Corporate Documents,* 84 MICH.L.REV. 1544, 1564–73 (1986) (arguing that application of the "act-of-production" doctrine to collective-entity cases would rarely throttle Government investigations or prosecution); Note, *Organizational Papers and the Privilege Against Self-Incrimination,* 99 HARV.L.REV. 640, 648 (1986) (same).

327 U.S. 186, 209, 66 S.Ct. 494, 506, 90 L.Ed. 614 (1946). In our view, the subpoena is not inordinately imprecise, notwithstanding its use of the phrases "related to" and "associated with," in view of the importance and comprehensiveness of the Independent Counsel's charge. It lists the documents to be produced with the reasonable particularity required by the Fourth Amendment.[11]

■■■ The Witness' final objection is that at least with respect to company records that were maintained or generated in Switzerland, the Swiss–American Treaty on Mutual Assistance in Criminal Matters provides the exclusive means for obtaining them because they were preserved or created in the expectation that Swiss secrecy laws would protect them. *See* Brief of Appellant at 14–16. We find this objection unconvincing. First, some of the documents sought may not be located in Switzerland. *See* Brief for Appellee Independent Counsel at 3 n. 1. This objection is therefore at best a partial attack on the subpoena. If the Witness has copies of the documents in his possession in the United States or in his control outside of Switzerland, then the objection apparently fails, unless the secrecy laws of another country would then be implicated.

Second, it is not clear from the Witness' brief that Swiss law forbids the companies or their custodians from complying with the subpoena even in regard to documents located in Switzerland. The Witness cites three statutory provisions, none of which, on its face, is plainly pertinent. *See* Brief of Appellant at 15 n. 11. Article 47(1) of the Swiss Federal Law (Relating to Banks and Savings Banks) refers to *bank* records; the subpoena requests *company* records. Article 271 of the Swiss Criminal Code applies to persons acting on behalf of a foreign state; it is not evident, and the Witness has not provided authority to suggest, that this provision would apply to a custodian responding to a grand jury subpoena. And Article 273 of the Swiss Criminal Code is directed at industrial spies, and thus seems irrelevant to the present action.

Third, even if the Witness might face possible prosecution in Switzerland if he complied with the subpoena, he would only run that risk if he traveled to Switzerland voluntarily. In *In re: Sealed Case*, 825 F.2d 494, 497 (D.C.Cir.1987), this court upheld a contempt order for failure to testify before a grand jury on similar facts, ruling that the Fifth Amendment "does not protect against dangers voluntarily assumed." We see no reason to depart from that precedent here.

Fourth, and most important, the Witness has offered no evidence that the United States Government, in signing the Treaty, understood it to supply the exclusive vehicle for obtaining documents in Switzerland whose production falls within the Treaty's ambit. The Swiss government, as *amicus curiae,* has indeed argued that any attempt to secure documents located in Switzerland and protected by Swiss secrecy laws would trammel Swiss sovereignty and offend common notions of international comity. *See Marc Rich & Co. v. United States,* 736 F.2d 864, 866 (2d Cir.1984). But the Witness has not cited any American decision adopting the Swiss government's view, and in fact almost all courts that have ruled on this issue or similar matters, such as the exclusivity of the discovery mechanisms contained in the Hague convention on evidence, have squarely rejected it.

The Second Circuit decided to order production of the corporate documents in *Marc Rich,* notwithstanding the Swiss government's plea. And although courts recognize comity as an important objective, there is little doubt that "[a] United States Court has the power to order any party within its jurisdiction to testify or produce documents regardless of a foreign sovereign's views to the contrary." *In re Anschuetz & Co.,* 754 F.2d 602, 613 n. 28 (5th Cir.1985). In *Societe Nationale Industr-*

---

**11.** The Witness also contends that his selection of documents conforming to the terms of the subpoena would have testimonial implications. This objection, however, goes not to the breadth of the subpoena but rather to the evidentiary significance of his compliance with it.

*ielle Aerospatiale v. United States District Court*, — U.S. ——, 107 S.Ct. 2542, 2551, 96 L.Ed.2d 461 (1987), for example, the Supreme Court refused to constrain the operation of United States discovery procedures, ruling that the Hague convention on evidence was "intended as a permissive supplement, not a preemptive replacement, for other means of obtaining evidence located abroad." And in *In re Grand Jury Proceedings (Field)*, 532 F.2d 404 (5th Cir.), *cert. denied*, 429 U.S. 940, 97 S.Ct. 354, 50 L.Ed.2d 309 (1976), the Fifth Circuit upheld a contempt order issued to a Canadian citizen who managed a bank in the Cayman Islands for failure to testify on the ground that his testimony, though immunized from prosecution in the United States, would expose him to criminal sanctions in the Cayman Islands for violating bank secrecy laws.

Most courts, including this one, are reluctant to embrace doctrines that would allow those who break American laws to escape sanctions by setting up base abroad. As one court noted, "If one defendant could so easily evade discovery, every United States company would have a foreign affiliate for storing sensitive documents." *Cooper Indus. v. British Aerospace*, 102 F.R.D. 918, 920 (S.D.N.Y.1984). That danger is particularly acute in this instance, because the Treaty might not permit the Independent Counsel to obtain all of the documents it seeks that are located in Switzerland or, if it is able to obtain them in this way, to use them as it desires for prosecutorial purposes. *See* Brief for Appellee Independent Counsel at 3 n. 1. The Witness' claim that the companies and their officers expected protection when they chose to incorporate or operate in Switzerland or other countries is devoid of force, for in light of the importance this country attaches to its discovery procedures and to the prosecution of those who are believed to have flouted its laws, those expectations were both unreasonable and, on balance, of trivial importance. On the evidence before us, we do not believe that the Treaty on Mutual Assistance in Criminal Matters or considerations of comity could possibly block enforcement of the subpoena with respect to those documents, if any, whose only copies are protected by Swiss law.

### III. Conclusion

When an alleged custodian of a collective entity is served with a subpoena *duces tecum* in his representative capacity, a court only has jurisdiction to issue an order compelling production of the subpoenaed documents if it has personal jurisdiction over the collective entity whose alleged custodian was served. Because the Independent Counsel has not demonstrated that the District Court possesses personal jurisdiction over the eight companies whose records it seeks, we reverse and remand to afford the Independent Counsel an opportunity to make the requisite showing. Under our reading of *Fisher* and *Doe* and their impact on Fifth Amendment jurisprudence, moreover, an alleged custodian of a collective entity is not foreclosed from invoking his privilege against compelled self-incrimination with regard to possibly incriminating testimonial admissions he might make in complying with a subpoena issued to him in his custodial capacity. If the Witness demonstrates that by producing the subpoenaed documents he might, through that very action, tend to incriminate himself, then the Independent Counsel must show that any possibly incriminating fact to which the Witness would implicitly testify is a "foregone conclusion."

*Reversed and remanded.*