**In re SEALED CASE.**

No. 80–1961.

United States Court of Appeals, District of Columbia Circuit.

Argued May 5, 1981.

Decided June 8, 1981.

Before WRIGHT, WALD and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

A corporation (hereinafter "the company") invites our review of an order denying in part its motion to quash a grand jury subpoena duces tecum served on its outside counsel.[1] We conclude that the order is not immediately reviewable. Accordingly we dismiss the appeal without reaching the merits of the controversy.

---

cations from an organization that has been accused of ... engaging in activities that create conflicts of interest.

1. Since the district court sealed the record below, we refer to all parties by generic names.

## I. FACTS

In 1976 the Internal Revenue Service (IRS) investigated alleged sensitive payments the company had made abroad. The company's in-house general counsel and its outside counsel participated in the inquiry. In-house general counsel generated handwritten notes, file memoranda, and a cassette tape detailing the content of conversations relating to this inquiry.

In 1977 the Securities and Exchange Commission (SEC) asked the company to conduct an internal investigation into the same foreign payments and to report any findings to the SEC. The company retained a law firm (hereinafter "audit counsel") to make the investigation. In-house general counsel served as a liaison between the company's board of directors and audit counsel. During this investigation in-house general counsel created additional notes reflecting conversations with company officials, audit counsel, and government agents. The notes, like the materials generated during the IRS inquiry, allegedly reveal company confidences and proposed responses to the government investigations.

In May 1978 audit counsel submitted a final report to the company's directors. Later the same year, the SEC initiated a formal, nonpublic investigation into the existence of sensitive payments by the company. The company gave SEC investigators access to the final report, to audit counsel's notes of interviews conducted during preparation of the report, and to other documents underlying the report. The company subsequently produced copies of the same documents in response to an SEC subpoena. The subpoena, however, apparently did not request, and the company did not reveal, in-house general counsel's notes, memoranda, or cassette tape.

In October 1978 the Government convened a federal grand jury to investigate the company's foreign payments. The grand jury immediately subpoenaed the fi-

nal report, notes, and documents that the company had submitted to the SEC. The company supplied these materials without protest. In December 1979 the grand jury subpoenaed in-house general counsel, directing him to appear on January 15, 1980, and to produce records in his possession or subject to his control that related to the agency investigations of the company's foreign payments. In-house general counsel, who had left the company in August 1978, consulted with the company's outside counsel. Relying on outside counsel's advice, the former in-house general counsel appeared before the grand jury and produced some documents, but withheld thirty-eight others.[2] Former in-house general counsel announced that outside counsel had taken custody of the withheld documents and was asserting claims of attorney-client privilege and work product protection with respect to those documents.

The grand jury then subpoenaed the disputed materials from outside counsel. The subpoena directed outside counsel to produce:

The originals of any and all documents, records, files, reports, agreements, memoranda, tape recordings, dictaphone or stenographic recordings, transcriptions, notes, correspondence, telexes, or other communications, appointment book, calendar or log entries, diary entries, notes of meetings, conversations or conferences previously subpoenaed from . . . previous general counsel for [the company] and retained by you.

Brief of Appellant at A1. Outside counsel failed to appear before the grand jury on the specified date or to produce the requested materials. At about the same time, the company replaced outside counsel with new outside counsel (hereinafter "second outside counsel"). Second outside counsel took custody of the disputed documents and filed, on behalf of the company, a motion to quash the subpoena.

In-house general counsel originally claimed protection for forty-five documents. After further reflection, counsel determined that seven of these items did not fall within the scope of the subpoena.

---

2. As used in this opinion, the word "documents" includes, *inter alia*, the cassette tape prepared by in-house general counsel and pages from in-house general counsel's desk calendar.

The motion to quash asserted that the work product doctrine shields all of the documents and that the attorney-client privilege shelters most of them. The district judge reviewed the documents *in camera* and determined that the work product doctrine protects all thirty-eight documents; he did not rule on the attorney-client privilege claim. The district judge also found that the Government had shown no compelling need for the documents sufficient to overcome the work product protection and that the Government had failed to show that the documents were obtainable under the "crime-fraud" exception to the work product doctrine. The district judge, however, found that the company had voluntarily disclosed the substance of some confidential attorney-client communications by complying with the SEC and prior grand jury subpoenas. Therefore, the judge ruled, the company had impliedly waived both the attorney-client privilege and work product protection with respect to any documents detailing attorney-client discussions on the same subjects. Applying this rule, the district judge denied the motion to quash with respect to one entire document and portions of seven others.

The company moved for reconsideration or stay of the district judge's order. The judge denied this motion and ordered second outside counsel to produce the documents designated by his previous order. Second outside counsel did not indicate whether he intended to comply with this order; nor did the district judge hold second outside counsel in contempt. Instead, the company appealed the denial in part of its motion to quash and the district judge stayed his production orders pending disposition of this appeal.

## II. ANALYSIS

The company urges that the district judge incorrectly found an implied waiver of the attorney-client privilege and work product doctrine. We pretermit discussion of that issue because we hold that this court lacks authority to review the district court's determination at this time.

■ Congress has empowered the courts of appeals to review "final decisions" rendered by the district courts. 28 U.S.C. § 1291 (1976). The denial of a motion to quash a subpoena is not such a final decision; the district court decision becomes "final" only when the subpoenaed party refuses to comply with the court order and is cited for contempt. *Cobbledick v. United States*, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940); *United States v. Anderson*, 464 F.2d 1390 (D.C.Cir.1972). This "insistence on finality and prohibition of piecemeal review discourage undue litigiousness and leaden-footed administration of justice, particularly damaging to the conduct of criminal cases." *DiBella v. United States*, 369 U.S. 121, 124, 82 S.Ct. 654, 656–57, 7 L.Ed.2d 614 (1962) (citing *Cobbledick*).

The company contends that this court may hear its appeal under a well-recognized exception to the *Cobbledick* rule. In *Perlman v. United States*, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918), a United States Attorney sought access to exhibits that Perlman had deposited in federal district court in connection with a civil suit. A district judge ordered the court clerk to produce the exhibits to the United States Attorney. Perlman, asserting that Government use of the exhibits would violate the Fourth and Fifth Amendments, then attempted to bar the United States Attorney from obtaining the exhibits. The district judge denied Perlman's motion and, although the court clerk still retained the exhibits and had not been held in contempt for failing to produce them, the Supreme Court permitted Perlman to take an immediate appeal. Apparently reasoning that the court clerk would certainly comply with the production order, the Supreme Court ruled that Perlman would be "powerless to avert the mischief of the order" if he were denied an immediate appeal. 247 U.S. at 13, 38 S.Ct. at 419.[3] *See United States v.*

---

**3.** Perlman fared less well on the merits of his claim. The Court rejected both his Fourth and Fifth Amendment arguments.

*Ryan,* 402 U.S. 530, 533, 91 S.Ct. 1580, 1582, 29 L.Ed.2d 85 (1971).

The company claims that *Perlman* establishes a general, third-party exception to the finality rule, permitting "the holder of a privilege [like itself] to appeal an order directing a subpoena recipient such as [second outside counsel] to produce assertedly privileged materials." Reply Brief of Appellant at 3. The Supreme Court, however, has never construed *Perlman* so broadly. It has recognized the continued vitality of the exception, but has stressed that it is available only "in the limited class of cases where denial of immediate review would render impossible any review whatsoever of an individual's claims." *United States v. Ryan,* 402 U.S. at 533, 91 S.Ct. at 1582; *United States v. Nixon,* 418 U.S. 683, 691, 94 S.Ct. 3090, 3099, 41 L.Ed.2d 1039 (1974).

In this case, denial of the company's appeal will not "render impossible" appellate review of its claims. Outside counsel and second outside counsel took custody of the disputed, once in-house documents after the company had decided to resist their production. The company and its successive outside counsels must have been alert to the prospect that the Government might pursue its quest for the documents and seek a contempt citation against the documents' custodian. It is altogether reasonable to assume that the company trusted that outside and second outside counsel would vigorously resist production of the documents, and would risk contempt if the company wished to secure appellate review of an adverse decision in the first instance. The company, therefore, cannot comfortably argue now that circumstances beyond its control disarm it from testing on appeal the district court's order to produce.

Moreover, second outside counsel, unlike the court clerk custodian in *Perlman,* shares the company's interest in withholding the contested documents and has a special stake in resisting production. On behalf of the company, second outside counsel argued below and on appeal that the work product doctrine shields these documents from disclosure. As the company itself notes, the work product doctrine protects interests held by both the attorney and the client.[4] Thus second outside counsel has a double incentive to preserve appellate review of the work product claim.[5]

Finally, we believe this case falls outside the "limited class of cases" encompassed by *Perlman* because the company's in-house general counsel originally created the contested documents. If that counsel had remained with the company and had retained control of the documents, his position would relate intimately to the company's concerns. Since an employer exercises significant control over an in-house employee, the *Perlman* argument flags when an employer moves to quash a subpoena addressed to such an employee. *See National Super Spuds, Inc. v. New York Mercantile Exchange,* 591 F.2d 174 (2d Cir. 1979) (*Perlman* does not permit Commodity Futures Trading Commission to appeal, before any contempt citation, an order directing past and present Commission employees to answer questions posed by defendant in private class action).[6] *But see In re Grand Jury (C. Schmidt & Sons, Inc.),* 619 F.2d 1022 (3d Cir. 1980) (employer may immediately appeal order directing employees to appear before grand jury). An employer should not have the leeway to elevate the *Perlman* argument by transferring internally produced documents to an outside representative. For this reason, as well as for the reasons cited above, we believe that we cannot apply *Perlman* to this case without enlarging the exception to the point at which it engulfs the rule.

---

**4.** *See, e. g., Moody v. IRS,* 654 F.2d 795, 801 (D.C.Cir. 1981).

**5.** We are aware that second outside counsel did not generate the work product at issue in this case. The parties, however, have not distinguished among the company's succession of lawyers and it appears that second outside

counsel now has an interest in the security of a predecessor's work product.

**6.** *See* 591 F.2d at 180 on the benefits both sides may derive from a second look at the production order and on tailoring the contempt sanction to avoid harsh consequences to the custodian.

We are aware that other circuits have differed over whether a client may immediately appeal the denial of a motion to quash a subpoena addressed to its attorney.[7] *Compare In re Oberkoetter*, 612 F.2d 15 (1st Cir.) (client may not immediately appeal order directing attorney to testify before grand jury), *application for stay denied*, 444 U.S. 1041, 100 S.Ct. 726, 62 L.Ed.2d 727 (1980), *with In re Grand Jury Proceedings (Appeal of FMC Corp.)*, 604 F.2d 798 (3d Cir. 1979) (corporation could appeal order directing outside counsel to produce documents to grand jury); *Velsicol Chemical Corp. v. Parsons*, 561 F.2d 671 (7th Cir. 1977) (same), *cert. denied*, 435 U.S. 942, 98 S.Ct. 1521, 55 L.Ed.2d 538 (1978);[8] *In re Grand Jury Proceedings (Jeffrey Fine)*, 641 F.2d 199 (5th Cir. 1981) (client could appeal order directing attorney to reveal client's name); *In re Grand Jury Proceedings (Gary Katz)*, 623 F.2d 122 (2d Cir. 1980) (client could appeal order directing attorney to surrender documents to grand jury). In at least three of the four cases permitting an immediate appeal, however, none of the documents appears to have been generated by in-house counsel.[9] There is no indication in any of those cases that counsel took custody of the documents after the client had determined to withhold them. In two of the cases, moreover, the parties asserted no work product protection. *Fine; Katz.* In the other two cases there were work product claims, but the attorneys stated that they did not intend to resist compliance with the court orders to produce. *FMC Corp.*, 604 F.2d at 800; *Velsicol Chemical Corp.*, 561 F.2d at 674. We therefore express no opinion on the results in those cases. We note only that the circumstances there differed from the circumstances here

and that, if we applied *Perlman* to this case, the exception could be manipulated to eclipse the rule. Nor do we hold that an attorney must always risk contempt before the client may perfect an appeal on a claim of privilege. Rather, we hold only that, until the Supreme Court informs us that *Perlman* applies to more than a "limited class of cases," it is not our prerogative to enlarge the exception to accommodate the case at hand.

## CONCLUSION

The district court order denying in part the company's motion to quash is not a final order appealable under 28 U.S.C. § 1291. Since we lack authority at this juncture to entertain the issues appellant tenders, we dismiss the appeal.

---

7. Our own court has not previously addressed the issue. We recently cited *Perlman* in *In re Grand Jury Investigation of Ocean Transportation*, 604 F.2d 672 (D.C.Cir.), *cert. denied sub nom. Sea-Land Service, Inc. v. United States*, 444 U.S. 915, 100 S.Ct. 915, 62 L.Ed.2d 169 (1979), and *United States v. AT&T Co.*, 642 F.2d 1285 (D.C.Cir.1980). Neither of those cases, however, involved an attempt by an interested party to appeal the denial of a motion to quash a grand jury subpoena addressed to a third person. Thus neither decision illuminates our path in this case.

8. *See also In re November 1979 Grand Jury*, 616 F.2d 1021 (7th Cir. 1980) (permitting appeal from denial of motion to quash second set of subpoenas issued to same lawyers).

9. *Katz* does not indicate whether the attorney who received the subpoena was in-house or outside counsel. Since the Government initially thought he was an employee of one of the parties under investigation, 623 F.2d at 123, he may have been an in-house counsel.