United States Court of Appeals
 for the District of Columbia Circuit
 
 
 
 
 Argued March 20, 1998 Decided April 1, 1998
 
 
 
 No. 98-5062
 
 In re: Sealed Case No. 98-5062
 
 
 
 On Petition for Writ of Mandamus Directed to the United
 States District Court for the District of Columbia
 (No. 98ms00042)
 
 
 Herbert J. Miller, Jr., argued the cause and filed the
 Petition for Writ of Mandamus. 
 
 Robert S. Bennett argued the cause and filed the
 response. 
 
 Before: Williams, Henderson and Tatel, Circuit Judges.
 
 Opinion for the Court filed by Circuit Judge Williams.
 Concurring Opinion filed by Circuit Judge Henderson.
 
 Williams, Circuit Judge: Respondent, defendant in a
 civil case pending in the United States District Court for
 the Eastern District of Arkansas, served a subpoena duces
 tecum on petitioner, a law firm, demanding production of
 documents and testimony at a deposition in Washington, D.C. 
 That subpoena, in conformance with Federal Rule of Civil
 Procedure 45(a)(2), issued from the United States District
 Court for the District of Columbia. When petitioner
 objected to the subpoena, respondent filed a motion to
 compel in district court here, and petitioner responded with
 a motion to quash the subpoena, also in district court here.
 Further, suggesting that the trial court in Arkansas was
 more familiar with the issues presented, respondent moved
 the district court here to transfer the motions to the
 Eastern District of Arkansas. Petitioner objected, but the
 trial court granted the transfer motion. Petitioner
 thereupon sought review of the transfer order via this
 mandamus petition. 
 Finding that the district court lacked authority to
 transfer the motions under the Federal Rules of Civil
 Procedure, we vacate the order. 
 I.
 Mandamus will issue only upon a showing that the
 petitioner's right is "clear and indisputable," Gulfstream
 Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 289
 (1988), and that "no other adequate means to attain the
 relief" exist, Allied Chemical Corp. v. Daiflon, Inc., 449
 U.S. 33, 35 (1980). We leave to part II the analysis of
 petitioner's right and here determine only the threshold
 issue of the adequacy of other means of relief.
 A conceivable alternative would have been for
 petitioner to proceed by direct appeal. In all likelihood,
 of course, the only consequence of finding that this was a
 viable alternative would be a need to relabel the mandamus
 action an appeal, but it turns out that appeal is not
 available. 
 Ordinarily a discovery order is not considered final
 and hence may not be immediately appealed under 28 U.S.C.
  1291. A party seeking interlocutory review must instead
 disobey the order and be cited for contempt. He may then
 appeal the contempt order, which is considered final, and
 argue that the discovery order was flawed. See Church of
 Scientology of California v. United States, 506 U.S. 9, 18
 n.11 (1992) (citing United States v. Ryan, 402 U.S. 530, 532
 (1971)); In re Kessler, 100 F.3d 1015, 1016 (D.C. Cir.
 1997). Under the so-called Perlman doctrine, however,
 discovery orders addressed to disinterested nonparties are
 immediately appealable. See Church of Scientology, 506 
 U.S. at 18 n.11 (citing Perlman v. United States, 247 U.S. 7
 (1918); In re Sealed Case, 655 F.2d 1298, 1300-01 (D.C. Cir.
 1981) ("Sealed Case I"). 
 Perlman appears inapplicable to these facts, however.
 It reflected concern that where the subject of the discovery
 order (characteristically the custodian of documents) and
 the holder of a privilege are different, the custodian might
 yield up the documents rather than face the hazards of
 contempt, and would thereby destroy the privilege. See
 Sealed Case I, 655 F.2d at 1300-01. Here, however,
 petitioner is asserting its own interests in work product
 and in not being subject to what it claims is burdensome and
 abusive discovery, plus the privilege of its client (which
 it is normally duty-bound to assert, see Republic Gear Co.
 v. Borg-Warner Corp., 381 F.2d 551, 556 (2d Cir. 1967);
 Model Rules of Professional Conduct Rule 1.6 (1995)). Thus
 it has the requisite incentives (as well as the clear
 ability) to risk contempt and thereby force review into the
 usual channel. Accordingly, direct appeal is unavailable as
 an alternative avenue for relief. Respondent suggests that petitioner may file a motion
 in Arkansas requesting that the matter be retransferred. 
 This strikes us as plainly inadequate. Petitioner rests its
 objection to the transfer order precisely on the theory that
 the Rules of Civil Procedure protect it from having to
 litigate in or travel to any forum other than that which
 issued the subpoena, i.e., the district court for the
 District of Columbia. Sending it to the federal court in
 Arkansas to press that claim obviously denies it, in a way
 that cannot be remedied on appeal. 
 This circuit has frequently exercised its mandamus
 jurisdiction to vacate transfer orders, especially where the
 transfer was beyond the district court's power, as
 petitioner alleges here. See, e.g., Ukiah Adventist Hosp.
 v. FTC, 981 F.2d 543, 548 (D.C. Cir. 1992); In re Briscoe,
 976 F.2d 1425, 1427 (D.C. Cir. 1992); In re Scott, 709 F.2d
 717, 719 (D.C. Cir. 1983). Respondent tries to distinguish
 these cases as involving transfers of an entire civil
 action, as opposed to a motion. The distinction may bear on
 the district court's power to make the transfer, but we do
 not see how it undermines the case for mandamus relief. 
 Petitioner is not a party to the underlying litigation. 
 From its perspective, and indeed from ours as well, the
 controversy between it and the respondent consists solely of
 the discovery dispute. Thus, in the absence of any
 explanation by respondent of his conclusory argument against
 application of the principle allowing mandamus for review of
 a transfer order, we find it available as it would be to any
 transfer of any case, large or (as here) small. 
 The writ is available not only to "confin[e] 'an
 inferior court to a lawful exercise of its prescribed
 jurisdiction'" In re Halkin, 598 F.2d 176, 198 (D.C. Cir.
 1979) (quoting Roche v. Evaporated Milk Ass'n, 319 U.S. 21,
 26 (1943)), but also "to prevent abuses of a district
 court's authority to transfer a case." Ukiah, 981 F.2d at
 548 (quoting In re Chatman-Bey, 718 F.2d 484, 486 (D.C. Cir.
 1983). Mandamus vacating the transfer order and keeping the
 matter in this circuit would, moreover, be "in aid of" our
 jurisdiction, thus fitting neatly within the language of the
 All Writs Act, 28 U.S.C.  1651(a). Satisfied that the
 nature of the alleged error is such as to permit correction
 by mandamus, we now turn to the merits.
 II.
 The district court rested its conclusion largely on the
 Advisory Committee's Note to the 1970 amendments to Rule
 26(c), but the place to start, whatever the Note's ultimate
 relevance, is the text of Rule 45. That text offers no
 authorization to transfer a motion to quash and seems at
 least implicitly to forbid it. The rule permits, and in
 some circumstances requires, "the issuing court" to quash or
 modify a subpoena. See Fed. R. Civ. P. 45(c)(3)(A). It
 allows enforcement of a subpoena following objections only
 "pursuant to an order of the court by which the subpoena was
 issued." Fed. R. Civ. P. 45(c)(2)(B). It provides that
 failure to obey a subpoena may be deemed contempt "of the
 court from which the subpoena issued." Fed. R. Civ. P.
 45(e). All of this language suggests that only the issuing
 court has the power to act on its subpoenas. See, e.g.,
 Kearney v. Jandernoa, 172 F.R.D. 381, 383 n.4 (N.D. Ill.
 1997); Byrnes v. Jetnet Corp., 111 F.R.D. 68, 69 (M.D.N.C.
 1986). Subpoenas are process of the issuing court, see In
 re Certain Complaints Under Investigation, 783 F.2d 1488,
 1494-95 (11th Cir. 1986), and nothing in the Rules even
 hints that any other court may be given the power to quash
 or enforce them. See Productos Mistolin, S.A. v. Mosquera,
 141 F.R.D. 226, 227-29 (D. P.R. 1992) (quoting Advisory
 Committee Notes on 1991 amendments).
 There are other textual difficulties with transfer of
 motions to quash. Rule 45(c)(3)(A)(ii) directs the issuing
 court to quash or modify a subpoena that requires a nonparty
 to travel more than 100 miles from the place where the
 nonparty "resides, is employed or regularly transacts
 business in person." This restriction is obviously hard to
 square with a principle that allows the issuing court to
 transfer the motion to quash to another district--in this
 case, the parties tell us, a district 892 miles away. 
 Perhaps more significant, not only would a transferee court
 lack statutory authority to quash or enforce another court's
 subpoena, it would often lack personal jurisdiction over the
 nonparty. The principle that courts lacking jurisdiction
 over litigants cannot adjudicate their rights is elementary,
 and cases have noted the problem this creates for the
 prospect of transferring nonparty discovery disputes. See
 Byrnes, 111 F.R.D. at 70 & nn.1 & 2; cf. Piper Aircraft Co.
 v. Reyno, 454 U.S. 235, 241 (1981) (noting requirement of
 personal jurisdiction in alternative forum for dismissal
 under the forum non conveniens doctrine); 28 U.S.C.
  1404(a) (allowing transfer to any other district "where
 [the action] might have been brought").
 More generally, the rules governing subpoenas and
 nonparty discovery have a clearly territorial focus.
 Applications for orders compelling disclosure from
 nonparties must be made to the court in the district where
 the discovery is to be taken; failure to comply with such an
 order is a contempt of that court. Fed. R. Civ. P.
 37(a)(1); 37(b). Subpoenas for attendance at a trial must
 issue from the court for the district in which the trial is
 held; for attendance at a deposition, from the court for the
 district in which the deposition is to be taken. Fed. R.
 Civ. P. 45(a)(2). (Rule 34(c) explicitly makes the subpoena
 process of Rule 45 the route to compelling production of
 documents from nonparties.) It may well be true, as
 respondent suggests, that the trial court will be better
 able to handle discovery disputes. But Congress in the
 Rules has clearly been ready to sacrifice some efficiency in
 return for territorial protection for nonparties. Cf.
 Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 1998
 WL 85319, at *9 (U.S. 1998) (acknowledging that broader
 district court authority to transfer cases might be
 desirable but observing that "the proper venue for resolving
 that issue remains the floor of Congress").
 What of Rule 26(c), springboard for the Advisory
 Committee Note on which the district court relied? That
 rule authorizes the issuance of protective orders by "the
 court in which the action is pending or alternatively, on
 matters relating to a deposition, the court in the district
 where the deposition is to be taken." It says nothing of
 transfer. An Advisory Committee Note to the 1970 amendments
 states that "[t]he court in the district where the
 deposition is being taken may, and frequently will, remit
 the deponent or party to the court where the action is
 pending." 
 We can assume that if Rule 45 were ambiguous, one might
 look to a clear Advisory Committee Note to resolve that
 ambiguity--maybe even an Advisory Committee Note to a
 completely different rule, and maybe even a Note written 21
 years before the 1991 amendment added subdivision 45(c) to
 "clarify and enlarge the protections" afforded witnesses. 
 Advisory Committee Note to Federal Rule of Civil Procedure
 45. But cf. Libretti v. United States, 516 U.S. 29, 41
 (1995) (rejecting use of Advisory Committee Note on one rule
 to elucidate meaning of another, and pointing to different
 dates of rule and Note). 
 But before tackling all the ifs and stretches in that
 assumption, it is useful first to address the text of the
 Note. It refers to the possibility that "[t]he court in the
 district where the deposition is being taken may, and
 frequently will, remit the deponent or party to the court
 where the action is pending." Respondent's argument takes
 "remit the deponent or party" to mean "transfer the motion." 
 But that is not the phrase's meaning unless the Advisory
 Committee used English incorrectly, or at least
 eccentrically. "Remit" can indeed mean "to submit or refer
 (something) for consideration, judgment, decision or action
 . . . ." Webster's Third New International Dictionary 1920
 (1981). That usage would make sense if the motion were the
 object of "remit." But it isn't. The object of "remit" is
 an active person or entity, "the deponent or party." Thus
 the relevant usage supplied by the dictionary is "to refer
 (a person) for information or help (as to a book or
 person)." Id. 
 The Advisory Committee Note is thus more naturally read
 to suggest that the court for the district where the
 deposition is to be taken may stay its action on the motion,
 permit the deponent to make a motion for a protective order
 in the court where the trial is to take place, and then
 defer to the trial court's decision. See Kearney, 172
 F.R.D. at 383. This reading cures the jurisdictional
 problems; a nonparty that moves for a protective order in
 the court of the underlying action thereby submits to that
 court's jurisdiction. 
 Such a reading might seem to raise a new question: does
 it allow the nonparty witness territorial convenience with
 respect to motions to quash but not with respect to motions
 for a protective order? They are not obviously so
 different; in fact there is broad overlap in the grounds for
 granting the two motions. Compare Fed. R. Civ. P. 26(c)(1)-
 (4) with Fed. R. Civ. P. 45(c)(3)(A). As it turns out, the
 differential treatment is only apparent. The operation of
 the subpoena rules in fact grants nonparty witnesses the
 privilege of choosing to litigate in their home districts
 regardless of how relief is sought.
 In the end what affords the nonparty deponent this
 territorial protection is that the rules vest power to
 compel discovery from a nonparty, and to impose contempt
 sanctions for non-compliance, in the subpoena-issuing court. 
 Fed. R. Civ. P. 37(a)(1); Fed. R. Civ. P. 45(e). Rule 26(c)
 permits that court to stay its proceedings on a nonparty
 deponent's motion for a protective order pending action by
 the trial court, and to defer to the trial court's
 resolution of that motion. The rules may well allow similar
 abstention on a motion to quash, followed by deference to
 the trial court's decision on a motion for a protective
 order; this was the technique used in Kearney. But if the
 nonparty deponent fails to take the bait and move for a
 protective order in the trial court, the issuing court must
 make the decision whether discovery may be had, and its
 scope, since it is the only court with the power to order
 enforcement.
 Other courts have recently adopted this reading of the
 Advisory Committee Note. See, e.g., Orthopedic Bone Screw
 Prods., 79 F.3d at 48 (reading the Note's use of "remit" as
 referring simply to power in court that issued subpoena to
 stay motion by nonparty witness for protective order and
 defer to decision of the district court where discovery
 proceedings in the underlying action were pending under 28
 U.S.C.  1407); Cent. States, Southeast & Southwest Areas
 Pension Fund v. Quickie Transport Co., 174 F.R.D. 50, 51 n.1
 (E.D. Pa. 1997); Kearney, 172 F.R.D. at 383. It appears
 also to have been the understanding of courts and
 commentators nearer the time of the 1970 Advisory Note. See
 Socialist Workers Party v. Att'y Gen., 73 F.R.D. 699, 701
 (D. Md. 1977) (quoting 1976 Moore's Federal Practice). 
 As this reading fits so easily with the text of the
 rules, it seems more compelling than respondent's proposed
 finding of a transfer power that is bereft of linguistic
 support in the rules. See United States v. Carey, 120 F.3d
 509, 512 (4th Cir. 1997) ("But the Advisory Committee Note
 is not the law; the rule is. Accordingly, if the Advisory
 Committee Note can be read in two ways, we must read it, if
 we consult it at all, in a manner that makes it consistent
 with the language of the rule itself.").
 The district court's reliance on the Advisory Committee
 Note to Rule 26(c) is not, to be sure, unique. In dicta
 other courts have suggested that the Note implies the
 existence of a transfer power for all discovery disputes
 involving nonparties, including motions to quash subpoenas. 
 See, e.g., In re Digital Equipment Corp., 949 F.2d 228, 231
 (8th Cir. 1991); Petersen v. Douglas County Bank & Trust
 Co., 940 F.2d 1389, 1390 (10th Cir. 1991). But "if the rule
 and the note conflict, the rule must govern." Carey, 120
 F.3d at 512. 
 In short, the idea that a district court may transfer a
 motion to quash a subpoena rests on a misreading of a non-
 authoritative source that relates to a different rule. The
 Rules of Civil Procedure themselves do not provide any basis
 for such authority, and district courts have no inherent
 powers to transfer. See Hicks v. Duckworth, 856 F.2d 934,
 936 (7th Cir. 1988); cf. Lexecon Inc. v. Milberg Weiss
 Bershad Hynes & Lerach, 1998 WL 85319, at *6-9 (U.S. 1998). 
 Because the district court here exceeded its authority,
 mandamus will issue to vacate the transfer order.
 So ordered.
  Karen LeCraft Henderson, Circuit Judge, concurring:
 I agree with the majority that the district court's decision to transfer the
 cross-motions to quash and to compel compliance with the subpoena is reviewable
 on petition for mandamus. See Hicks v. Duckworth, 856 F.2d 934, 935 (7th Cir.
 1988) ("The use of mandamus (28 U.S.C.  1651(a)) to correct an erroneous
 transfer out of circuit has been approved. It is difficult to see how such an error
 could be corrected otherwise."). I also agree that the district erred in transferring
 the motions to the Eastern District of Arkansas. I stop short, however, of deciding,
 as does the majority, that a district court lacks authority to order a transfer. 
 Assuming such authority exists, it should be reserved for the extraordinary,
 complex case in which the transferee court is plainly better situated to resolve the
 discovery dispute. This is not that case. The respondent has made no showing that
 the reasons cited for quashing the subpoena--that it is overbroad and covers
 information that is privileged, not relevant to the underlying lawsuit and sought
 "for improper purposes"--cannot be readily assessed by the district court here as
 such arguments routinely are. See, e.g., Linder v. Department of Defense, 133
 F.3d 17, 24 (D.C. Cir. 1998); Food Lion, Inc. v. United Food & Commercial
 Workers Int'l Union, 103 F.3d 1007, 1013-14 (D.C. Cir. 1997). In any event, I
 believe the court abused its discretion in attempting to transfer the motions here
 without inquiring into the personal jurisdiction of the transferee court over the
 petitioner, a sine qua non for deciding the discovery motions. See In re Sealed
 Case, 832 F.2d 1268, 1270 (D.C. Cir. 1987) (reversing district court order
 compelling production of companies' records where Independent Counsel failed to
 make "the requisite showing" that district court "has personal jurisdiction over
 each of the companies whose records it seeks"); but cf. EEOC v. National
 Children's Center, 98 F.3d 1406, 1410-11 (D.C. Cir. 1996) (reversing as "abuse of
 discretion" district court decision to seal portion of record because court did not
 "articulate its reasons for electing to seal" and remanding "so that the court can
 further explain its decision"). I therefore agree with the majority that the district
 court's order should be vacated.