### In re: SEALED CASE

### No. 98–5062.

United States Court of Appeals, District of Columbia Circuit.

Argued March 20, 1998.

Decided April 1, 1998.

Printed April 14, 1998.

---

Herbert J. Miller, Jr., argued the cause and filed the Petition for Writ of Mandamus.

Robert S. Bennett argued the cause and filed the response.

Before: WILLIAMS, HENDERSON and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILLIAMS.

Concurring Opinion filed by Circuit Judge HENDERSON.

WILLIAMS, Circuit Judge:

Respondent, defendant in a civil case pending in the United States District Court for the Eastern District of Arkansas, served a subpoena duces tecum on petitioner, a law firm, demanding production of documents and testimony at a deposition in Washington, D.C. That subpoena, in conformance with Federal Rule of Civil Procedure 45(a)(2), issued from the United States District Court for the District of Columbia. When petitioner objected to the subpoena, respondent filed a motion to compel in district court here, and petitioner responded with a motion to quash the subpoena, also in district court here. Further, suggesting that the trial court in Arkansas was more familiar with the issues presented, respondent moved the district court here to transfer the motions to the Eastern District of Arkansas. Petitioner objected, but the trial court granted the transfer motion. Petitioner thereupon sought review of the transfer order via this mandamus petition.

Finding that the district court lacked authority to transfer the motions under the Federal Rules of Civil Procedure, we vacate the order.

## I.

Mandamus will issue only upon a showing that the petitioner's right is "clear and indisputable," *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289, 108 S.Ct. 1133, 1143–44, 99 L.Ed.2d 296 (1988), and that "no other adequate means to attain the relief" exist, *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980). We leave to part II the analysis of petitioner's right and here determine only the threshold issue of the adequacy of other means of relief.

A conceivable alternative would have been for petitioner to proceed by direct appeal. In all likelihood, of course, the only consequence of finding that this was a viable alternative would be a need to relabel the mandamus action an appeal, but it turns out that appeal is not available.

Ordinarily a discovery order is not considered final and hence may not be immediately appealed under 28 U.S.C. § 1291. A party seeking interlocutory review must instead disobey the order and be cited for contempt. He may then appeal the contempt order, which is considered final, and argue that the discovery order was flawed. See *Church of Scientology of California v. United States*, 506 U.S. 9, 18 n. 11, 113 S.Ct. 447, 452 n. 11, 121 L.Ed.2d 313 (1992) (citing *United States v. Ryan*, 402 U.S. 530, 532, 91 S.Ct. 1580, 1581–82, 29 L.Ed.2d 85 (1971)); *In re Kessler*, 100 F.3d 1015, 1016 (D.C.Cir. 1997). Under the so-called *Perlman* doc-

trine, however, discovery orders addressed to disinterested nonparties are immediately appealable. See *Church of Scientology*, 506 U.S. at 18 n. 11, 113 S.Ct. at 452 n. 11 (citing *Perlman v. United States*, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918); *In re Sealed Case*, 655 F.2d 1298, 1300–01 (D.C.Cir.1981)) (*"Sealed Case I"*).

*Perlman* appears inapplicable to these facts, however. It reflected concern that where the subject of the discovery order (characteristically the custodian of documents) and the holder of a privilege are different, the custodian might yield up the documents rather than face the hazards of contempt, and would thereby destroy the privilege. See *Sealed Case I*, 655 F.2d at 1300–01. Here, however, petitioner is asserting its own interests in work product and in not being subject to what it claims is burdensome and abusive discovery, plus the privilege of its client (which it is normally duty-bound to assert, see *Republic Gear Co. v. Borg–Warner Corp.*, 381 F.2d 551, 556 (2d Cir.1967); Model Rules of Professional Conduct Rule 1.6 (1995)).[1] Thus it has the requisite incentives (as well as the clear ability) to risk contempt and thereby force review into the usual channel. Accordingly, direct appeal is unavailable as an alternative avenue for relief.[2]

Respondent suggests that petitioner may file a motion in Arkansas requesting that the matter be retransferred. This strikes us as plainly inadequate. Petitioner rests its objection to the transfer order precisely on the theory that the Rules of Civil Procedure protect it from having to litigate in or travel to any forum other than that which issued the subpoena, i.e., the district court for the District of Columbia. Sending it to the federal court in Arkansas to press that claim obviously denies it, in a way that cannot be remedied on appeal.

This circuit has frequently exercised its mandamus jurisdiction to vacate transfer orders, especially where the transfer was beyond the district court's power, as petitioner alleges here. See, e.g., *Ukiah Adventist Hosp. v. FTC*, 981 F.2d 543, 548 (D.C.Cir. 1992); *In re Briscoe*, 976 F.2d 1425, 1427 (D.C.Cir.1992); *In re Scott*, 709 F.2d 717, 719 (D.C.Cir.1983). Respondent tries to distinguish these cases as involving transfers of an entire civil action, as opposed to a motion. The distinction may bear on the district court's power to make the transfer, but we do not see how it undermines the case for mandamus relief. Petitioner is not a party to the underlying litigation. From its perspective, and indeed from ours as well, the controversy between it and the respondent consists solely of the discovery dispute. Thus, in the absence of any explanation by respondent of his conclusory argument against application of the principle allowing mandamus for review of a transfer order, we find it available as it would be to any transfer of any case, large or (as here) small.

The writ is available not only to "confin[e] 'an inferior court to a lawful exercise of its prescribed jurisdiction'" *In re Halkin*, 598 F.2d 176, 198 (D.C.Cir.1979) (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26, 63 S.Ct. 938, 941–42, 87 L.Ed. 1185 (1943)), but also "to prevent abuses of a district court's authority to transfer a case." *Ukiah*, 981 F.2d at 548 (quoting *In re Chatman–Bey*, 718 F.2d 484, 486 (D.C.Cir.1983)). Mandamus vacating the transfer order and keeping the matter in this circuit would, moreover, be "in aid of" our jurisdiction, thus fitting neatly within the language of the All Writs Act, 28 U.S.C. § 1651(a). Satisfied that the nature of the alleged error is such as to permit correction by mandamus, we now turn to the merits.

## II.

The district court rested its conclusion largely on the Advisory Committee's

---

1. In some cases the attorney will indicate an intention to comply with the subpoena, and on those facts this circuit regards *Perlman* as controlling. See, e.g., *In re Sealed Case*, 754 F.2d 395, 399 (D.C.Cir.1985) (*"Sealed Case II"*). Of course that makes appeal available for the *client*, not, as here, the attorney.

2. Additionally, the "discovery" order from which petitioner seeks relief directs the transfer of a motion, not the production of documents; it is thus somewhat difficult even to fit into *Perlman's* analytic framework.

Note to the 1970 amendments to Rule 26(c), but the place to start, whatever the Note's ultimate relevance, is the text of Rule 45. That text offers no authorization to transfer a motion to quash and seems at least implicitly to forbid it. The rule permits, and in some circumstances requires, "the issuing court" to quash or modify a subpoena. See Fed.R.Civ.P. 45(c)(3)(A). It allows enforcement of a subpoena following objections only "pursuant to an order of the court by which the subpoena was issued." Fed.R.Civ.P. 45(c)(2)(B). It provides that failure to obey a subpoena may be deemed contempt "of the court from which the subpoena issued." Fed.R.Civ.P. 45(e).[3] All of this language suggests that only the issuing court has the power to act on its subpoenas. See, e.g., *Kearney v. Jandernoa,* 172 F.R.D. 381, 383 n. 4 (N.D.Ill.1997); *Byrnes v. Jetnet Corp.,* 111 F.R.D. 68, 69 (M.D.N.C.1986). Subpoenas are process of the issuing court, see *In re Certain Complaints Under Investigation,* 783 F.2d 1488, 1494–95 (11th Cir.1986), and nothing in the Rules even hints that any other court may be given the power to quash or enforce them. See *Productos Mistolin, S.A. v. Mosquera,* 141 F.R.D. 226, 227–29 (D.P.R.1992) (quoting Advisory Committee Notes on 1991 amendments).

There are other textual difficulties with transfer of motions to quash. Rule 45(c)(3)(A)(ii) directs the issuing court to quash or modify a subpoena that requires a nonparty to travel more than 100 miles from the place where the nonparty "resides, is employed or regularly transacts business in person." This restriction is obviously hard to square with a principle that allows the issuing court to transfer the motion to quash to another district—in this case, the parties tell us, a district 892 miles away. Perhaps more significant, not only would a transferee court lack statutory authority to quash or enforce another court's subpoena, it would often lack personal jurisdiction over the nonparty. The principle that courts lacking jur-

isdiction over litigants cannot adjudicate their rights is elementary, and cases have noted the problem this creates for the prospect of transferring nonparty discovery disputes. See *Byrnes,* 111 F.R.D. at 70 & nn.1 & 2; cf. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241, 102 S.Ct. 252, 258, 70 L.Ed.2d 419 (1981) (noting requirement of personal jurisdiction in alternative forum for dismissal under the forum non conveniens doctrine); 28 U.S.C. § 1404(a) (allowing transfer to any other district "where [the action] might have been brought").

More generally, the rules governing subpoenas and nonparty discovery have a clearly territorial focus. Applications for orders compelling disclosure from nonparties must be made to the court in the district where the discovery is to be taken; failure to comply with such an order is a contempt of that court. Fed.R.Civ.P. 37(a)(1); 37(b). Subpoenas for attendance at a trial must issue from the court for the district in which the trial is held; for attendance at a deposition, from the court for the district in which the deposition is to be taken. Fed.R.Civ.P. 45(a)(2). (Rule 34(c) explicitly makes the subpoena process of Rule 45 the route to compelling production of documents from nonparties.) It may well be true, as respondent suggests, that the trial court will be better able to handle discovery disputes. But Congress in the Rules has clearly been ready to sacrifice some efficiency in return for territorial protection for nonparties. Cf. *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,* —— U.S. ——, at ——, 118 S.Ct. 956, at 964–65, 140 L.Ed.2d 62 (1998) (acknowledging that broader district court authority to transfer cases might be desirable but observing that "the proper venue for resolving that issue remains the floor of Congress").

▮ What of Rule 26(c), springboard for the Advisory Committee Note on which the district court relied? That rule authorizes the issuance of protective orders by "the

---

3. In subsection (c)(1), Rule 45 assigns some enforcement duty to the court "on behalf of which the subpoena was issued." However, this clearly refers to the issuing court; the rule uses the "on behalf of" locution because it is discussing the duties of a party or attorney responsible for issu-

ing a subpoena. When the rule discusses the role of attorneys (as opposed to court clerks) in issuing subpoenas, it refers to the attorneys as issuing the subpoena "on behalf of" the court. See Fed.R.Civ.P. 45(a)(3).

court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken." It says nothing of transfer. An Advisory Committee Note to the 1970 amendments states that "[t]he court in the district where the deposition is being taken may, and frequently will, remit the deponent or party to the court where the action is pending."

We can assume that if Rule 45 were ambiguous, one might look to a clear Advisory Committee Note to resolve that ambiguity—maybe even an Advisory Committee Note to a completely different rule, and maybe even a Note written 21 years before the 1991 amendment added subdivision 45(c) to "clarify and enlarge the protections" afforded witnesses. Advisory Committee Note to Federal Rule of Civil Procedure 45. But cf. *Libretti v. United States,* 516 U.S. 29, 41, 116 S.Ct. 356, 364, 133 L.Ed.2d 271 (1995) (rejecting use of Advisory Committee Note on one rule to elucidate meaning of another, and pointing to different dates of rule and Note).

But before tackling all the ifs and stretches in that assumption, it is useful first to address the text of the Note. It refers to the possibility that "[t]he court in the district where the deposition is being taken may, and frequently will, remit the deponent or party to the court where the action is pending." Respondent's argument takes "remit the deponent or party" to mean "transfer the motion." But that is not the phrase's meaning unless the Advisory Committee used English incorrectly, or at least eccentrically. "Remit" can indeed mean "to submit or refer (something) for consideration, judgment, decision or action...." Webster's Third New International Dictionary 1920 (1981). That usage would make sense if the motion were the object of "remit." But it isn't. The object of "remit" is an active person or entity, "the deponent or party." Thus the relevant usage supplied by the dictionary is "to refer (a person) for information or help (as to a book or person)." *Id.*

The Advisory Committee Note is thus more naturally read to suggest that the court for the district where the deposition is to be taken may stay its action on the motion, permit the deponent to make a motion for a protective order in the court where the trial is to take place, and then defer to the trial court's decision. See *Kearney,* 172 F.R.D. at 383. This reading cures the jurisdictional problems; a nonparty that moves for a protective order in the court of the underlying action thereby submits to that court's jurisdiction.

■ Such a reading might seem to raise a new question: does it allow the nonparty witness territorial convenience with respect to motions to quash but not with respect to motions for a protective order? They are not obviously so different; in fact there is broad overlap in the grounds for granting the two motions. Compare Fed.R.Civ.P. 26(c)(1)-(4) with Fed.R.Civ.P. 45(c)(3)(A). As it turns out, the differential treatment is only apparent. The operation of the subpoena rules in fact grants nonparty witnesses the privilege of choosing to litigate in their home districts regardless of how relief is sought.

In the end what affords the nonparty deponent this territorial protection is that the rules vest power to compel discovery from a nonparty, and to impose contempt sanctions for non-compliance, in the subpoena-issuing court. Fed.R.Civ.P. 37(a)(1); Fed.R.Civ.P. 45(e). Rule 26(c) permits that court to stay its proceedings on a nonparty deponent's motion for a protective order pending action by the trial court, and to defer to the trial court's resolution of that motion. The rules may well allow similar abstention on a motion to quash, followed by deference to the trial court's decision on a motion for a protective order; this was the technique used in *Kearney*.[4] But if the nonparty deponent fails to take the bait and move for a protective order in the trial court, the issuing court must make the decision whether discovery may be had, and its scope, since it is the only court with the power to order enforcement.

---

**4.** *Kearney* noted explicitly that the nonparty could not make a motion to quash in the trial court; such a motion "must be filed and decided

in the court from which the subpoena issued." 172 F.R.D. at 383 n. 4

Other courts have recently adopted this reading of the Advisory Committee Note. See, e.g., *Orthopedic Bone Screw Prods.*, 79 F.3d at 48 (reading the Note's use of "remit" as referring simply to power in court that issued subpoena to stay motion by nonparty witness for protective order and defer to decision of the district court where discovery proceedings in the underlying action were pending under 28 U.S.C. § 1407); *Cent. States, Southeast & Southwest Areas Pension Fund v. Quickie Transport Co.*, 174 F.R.D. 50, 51 n. 1 (E.D.Pa.1997); *Kearney*, 172 F.R.D. at 383. It appears also to have been the understanding of courts and commentators nearer the time of the 1970 Advisory Note. See *Socialist Workers Party v. Att'y Gen.*, 73 F.R.D. 699, 701 (D.Md.1977) (quoting 1976 Moore's Federal Practice).

As this reading fits so easily with the text of the rules, it seems more compelling than respondent's proposed finding of a transfer power that is bereft of linguistic support in the rules. See *United States v. Carey*, 120 F.3d 509, 512 (4th Cir.1997) ("But the Advisory Committee Note is not the law; the rule is. Accordingly, if the Advisory Committee Note can be read in two ways, we must read it, if we consult it at all, in a manner that makes it consistent with the language of the rule itself.").

█ The district court's reliance on the Advisory Committee Note to Rule 26(c) is not, to be sure, unique. In dicta other courts have suggested that the Note implies the existence of a transfer power for all discovery disputes involving nonparties, including motions to quash subpoenas. See, e.g., *In re Digital Equipment Corp.*, 949 F.2d 228, 231 (8th Cir.1991); *Petersen v. Douglas County Bank & Trust Co.*, 940 F.2d 1389, 1390 (10th Cir.1991). But "if the rule and the note conflict, the rule must govern." *Carey*, 120 F.3d at 512.

In short, the idea that a district court may transfer a motion to quash a subpoena rests on a misreading of a nonauthoritative source that relates to a different rule. The Rules of Civil Procedure themselves do not provide any basis for such authority, and district courts have no inherent powers to transfer. See *Hicks v. Duckworth*, 856 F.2d 934, 936

(7th Cir.1988); cf. *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, —— U.S. ——, at —— ——, 118 S.Ct. 956, at 961–65, 140 L.Ed.2d 62 (1998). Because the district court here exceeded its authority, mandamus will issue to vacate the transfer order.

*So ordered.*

KAREN LeCRAFT HENDERSON, Circuit Judge, concurring:

I agree with the majority that the district court's decision to transfer the cross-motions to quash and to compel compliance with the subpoena is reviewable on petition for mandamus. See *Hicks v. Duckworth*, 856 F.2d 934, 935 (7th Cir.1988) ("The use of mandamus (28 U.S.C. § 1651(a)) to correct an erroneous transfer out of circuit has been approved. It is difficult to see how such an error could be corrected otherwise."). I also agree that the district erred in transferring the motions to the Eastern District of Arkansas. I stop short, however, of deciding, as does the majority, that a district court lacks authority to order a transfer. Assuming such authority exists, it should be reserved for the extraordinary, complex case in which the transferee court is plainly better situated to resolve the discovery dispute. This is not that case. The respondent has made no showing that the reasons cited for quashing the subpoena—that it is overbroad and covers information that is privileged, not relevant to the underlying lawsuit and sought "for improper purposes"—cannot be readily assessed by the district court here as such arguments routinely are. See, e.g., *Linder v. Department of Defense*, 133 F.3d 17, 24 (D.C.Cir.1998); *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 103 F.3d 1007, 1013–14 (D.C.Cir.1997). In any event, I believe the court abused its discretion in attempting to transfer the motions here without inquiring into the personal jurisdiction of the transferee court over the petitioner, a sine qua non for deciding the discovery motions. See *In re Sealed Case*, 832 F.2d 1268, 1270 (D.C.Cir.1987) (reversing district court order compelling production of companies' records where Independent Counsel failed to make "the requisite showing" that district court "has personal jurisdic-

tion over each of the companies whose records it seeks"); *but cf. EEOC v. National Children's Center,* 98 F.3d 1406, 1410–11 (D.C.Cir.1996) (reversing as "abuse of discretion" district court decision to seal portion of record because court did not "articulate its reasons for electing to seal" and remanding "so that the court can further explain its decision"). I therefore agree with the majority that the district court's order should be vacated.