FISCHER BREWING CO., INC. et al., Appellants,

v.

FLAX et al., Appellees.

[Cite as *Fischer Brewing Co. v. Flax* (2000), 138 Ohio App.3d 92.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 76155.

Decided June 13, 2000.

*French Firm Co., L.P.A.*, and *Richard H. French, Jr.*, for appellants.

*Kaufman & Cumberland Co.*, *Frank J. Cumberland* and *Craig P. Kale*; *Whiteford, Taylor & Preston*, *Lisa Kerschner* and *Frank Mastro*; *Coburn & Schertler* and *David Schertler*; *Kutak Rock, L.L.P.*, *Jill A. Byrne* and *Joseph Ingrisano*, for appellees.

PATTON, Presiding Judge.

Richard French sought both a motion for a protective order and a motion to quash on grounds of attorney-client privilege, a subpoena *de bene esse* issued by the District of Columbia law firm of Paley, Rothman, Goldstein, Rosenberg & Cooper ("Paley Rothman"). French also sought a protective order regarding a Paley Rothman subpoena for inspection of a computer in French's possession that contained records compiled by a defunct company called RG Investment Company. The court denied the motion to quash and further denied the motions for protective orders. French appeals.

Two separate foreign orders granting discovery are involved in this appeal. Because the issues are whether the court erred by refusing both to grant

protective orders and quash the subpoena for the deposition *de bene esse,* we limit our discussion of the facts to those narrow issues.

Benson Fischer, the chief executive officer of the Fischer Brewing Company, became involved in litigation with one Howard L. Flax over a finder's fee Flax claimed for introducing Fischer to an investment banking firm that agreed to underwrite an initial public offering of Fischer Brewing Company stock. Fischer produced documentation from a person named Howard Reissner, who, although not claiming for himself the finder's fee, nonetheless purported to have notified the investment banking firm of Fischer Brewing Company's desire to go public some four days before Flax. Paley Rothman was named a defendant in the action.

Discrepancies in Reissner's documentation led Paley Rothman to believe that the documentation was not genuine, and it later became known that the documentation submitted during discovery had been recreated by Reissner's assistant specifically for that purpose. Paley Rothman then filed counterclaims for bad-faith litigation against Fischer and Reissner. In support of its counterclaims, Paley Rothman sought information from French, a Cleveland-area attorney, who represented Reissner and consulted with Fischer, concerning the litigation involving the Fischer Brewing Company and Howard Reissner, and what role, if any, Benson Fischer might have played in Reissner's recreation of the finder's fee documents. Paley Rothman also sought to discover the contents of a computer hard drive located in the offices of RG Investment Company, Reissner's wholly owned firm from whence the disputed correspondence came.

The first foreign order concerns Paley Rothman's application for an order from the Superior Court of the District of Columbia allowing Paley Rothman to conduct French's deposition *de bene esse* in Ohio. Although the District of Columbia court granted Paley Rothman's motion to conduct French's deposition *de bene esse* without opposition from either Fischer or French, French subsequently refused to respond to the subpoena on grounds of attorney-client privilege. Paley Rothman filed a motion to compel French's compliance with the subpoena, and the issue in that matter appears to have boiled down to whether French actually represented Fischer during the time he claimed an attorney-client relationship. The District of Columbia court noted that Fischer answered an interrogatory stating that he engaged French as litigation counsel for a "number of months during 1998," but French's affidavit on that point was sufficiently vague to permit Paley Rothman to confirm the accuracy of the statements of French and Fischer.

The second foreign order granting discovery in Ohio likewise issued from the Superior Court of the District of Columbia. Paley Rothman asked for and received a commission authorizing the issuance of a subpoena *duces tecum* in the state of New Jersey upon RG Investment Company directing it to appear for

deposition and permitting inspection of files contained on a personal computer used by RG Investment Company. RG Investment Company did not contest the motion. The New Jersey Superior Court subsequently granted Paley Rothman's motion for an order authorizing the issuance of the subpoena *duces tecum*, the inspection to occur in RG Investment Company's New Jersey offices. Before the scheduled deposition and computer inspection occurred, however, French notified Paley Rothman that RG Investment Company became a "defunct entity" and that French had taken possession of the personal computer. French refused to divulge the whereabouts of the computer, claiming, "I have no obligation to tell you the whereabouts of the computer. That is privileged information."

When Paley Rothman filed its application in the court of common pleas for an order allowing discovery pursuant to the superior court orders, French immediately moved to quash the notice of deposition *de bene esse* issued by the District of Columbia court on grounds of attorney-client privilege or that the sought-for discovery had been obtained in prior proceedings. French likewise asked for a protective order relating to the inspection of the RG Investment Company computer on grounds that testimony and documents had been obtained and that the computer still contained privileged information, trade secrets and/or confidential research, development or commercial information.

With respect to the French deposition *de bene esse*, Paley Rothman responded by claiming the superior court considered the same attorney-client privilege arguments when it decided to grant Paley Rothman's motion to compel French to submit to the deposition *de bene esse*. With respect to the subpoena relating to RG Investment, Paley Rothman argued that its first inspection of the computer had been limited to certain files (the recreated letters sent by Reissner's assistant), and there was reason to believe those files might have been altered sometime after they were recreated during discovery.

The court denied both motions for protective orders, as well as the motion to quash the subpoena for a deposition *de bene esse*. The sole assignment of error complains the court erred by denying the motion to quash and the motions for a protective order.

There is very little Ohio authority concerning R.C. 2319.09, which codifies the Uniform Foreign Depositions Act. The Act provides:

"Whenever any mandate, writ, or commission is issued out of any court of record in any other state, territory, district, or foreign jurisdiction, or whenever upon notice or agreement it is required to take the testimony of a witness in this state, witnesses may be compelled to appear and testify in the same manner and by the same process and proceedings as are employed for the purpose of taking testimony in proceedings pending in this state."

It is important to recognize that a foreign court order authorizing discovery in this state does not vest the Ohio court with broad authority to conduct discovery. In *E.I. DuPont de Nemours & Co. v. Thompson* (1986), 29 Ohio App.3d 272, 274, 29 OBR 336, 338, 504 N.E.2d 1195, 1197, we held that R.C. 2319.09 "gives the courts of this state the authority to compel attendance and testimony at depositions taken in Ohio." A component to this power to compel attendance is the authority to impose sanctions if the deponent fails to attend a deposition. *Id.*

We do not view the court's power under R.C. 2319.09 as extending any further than enforcing the implementation of the foreign discovery order. Principles of comity and full faith and credit prohibit Ohio courts from countermanding otherwise valid discovery orders issued by foreign courts. Our adherence to these legal precepts causes us to disagree with a statement contained in *Lampe v. Ford Motor Co.* (Jan. 19, 2000), Summit App. No. 19388, unreported, 2000 WL 59907. *Lampe* cited to *In re Kirkland & Ellis v. Chadbourne & Parke, L.L.P.* (N.Y.Sup.Ct.1998), 176 Misc.2d 73, 670 N.Y.S.2d 753, for the proposition that "the role of courts outside the forum state includes the authority to examine the facts underlying a subpoena and to quash when necessary." This approach is not the law in New York and should not be the law in Ohio.

First, there is some question whether an Ohio court would have authority to quash a foreign subpoena. Civ.R. 45(C)(3) states that only the court "from which the subpoena was issued" shall have authority to quash a subpoena. Because the District of Columbia court issued the subpoena, only it has the right to quash the subpoena. We note that *Lampe* cited Civ.R. 45(C)(3), but nonetheless permitted the Ohio court to modify a subpoena. It is unclear to us whether the subpoena at issue in *Lampe* came from Ohio or the foreign state—the court of appeals' citation to Civ.R. 45(C)(3) would suggest the subpoena issued from Ohio, yet the court of appeals' discussion of quashing foreign subpoenas clearly states that courts outside the forum state can quash subpoenas.[1] We must conclude that *Lampe* fully intended that an Ohio court could quash a foreign subpoena, and we find that view wrong.

Second, the case law cited by *Lampe* does not appear to control in New York. In an earlier opinion, *In re Shea, Gould, Climenko & Casey v. Simpson, Thacher & Bartlett* (N.Y.Sup.Ct.1979), 98 Misc.2d 484, 486, 414 N.Y.S.2d 80, 82, a New York court stated that it was "merely exercising its functions to assist and

---

1. We assume the *Lampe* court did not intend to suggest that the Ohio court, implementing a foreign commission for discovery, is actually the "issuing" court for the subpoena for purposes of Civ.R. 45(C)(3). Such a view would be a fiction, for the Ohio court would not have considered the substance of the subpoena and truly would not have been the court to issue the subpoena in the first instance.

implement in this jurisdiction, the mandate of the Pennsylvania trial court * * *." The court went on to note an earlier unreported case that likewise held that to the extent a Texas court had determined the permissible limits of discovery, "the New York court would issue its orders in implementation thereof."

 Given the limited nature of the Ohio court's role in implementing the subpoena and issuing orders to ensure compliance with the subpoena, we believe that court had no authority to rule on motions for a protective order or a motion to quash that went to the heart of the subpoena. This is particularly so when the District of Columbia court overruled the same objections to the same subpoena.[2] French's redress is with the District of Columbia court—a court that has initial jurisdiction of the matter and has had the opportunity to consider fully all the arguments relating to discovery.

By this analysis we do not purport to delineate in any comprehensive manner the contours of the court's authority when allowing discovery pursuant to a foreign commission; rather, we decide only the matter before us with any eye toward effectuating the foreign discovery order. For these reasons we find it would have been beyond the court's authority to quash the foreign subpoenas or grant protective orders on issues of attorney-client privilege. Consequently, the court did not err by refusing to issue the protective orders or quash the subpoena. The assigned error is overruled.

*Judgment affirmed.*

SPELLACY, J., concurs.

PORTER, J., concurs separately.

PORTER, Judge, concurring.

I concur in the result only and write to explain why I disagree with the majority's conclusion that our trial "court had no authority to rule on motions for a protective order or a motion to quash." I do agree that the trial court did not abuse its discretion in overruling the motions to quash or for a protective order out of deference to the rulings of the District of Columbia Superior Court.

---

2. Paley Rothman has argued this point as one of collateral estoppel, but we think this argument is imprecise. Collateral estoppel bars relitigation of the same cause of action between the same parties or their privies. *New Winchester Gardens, Ltd. v. Franklin Cty. Bd. of Revision* (1997), 80 Ohio St.3d 36, 41, 684 N.E.2d 312, 316–317. An application for an order allowing discovery pursuant to a foreign commission is not an "action" between the parties as contemplated under principles of *res judicata*. As we have said, it is more in the nature of an ancillary proceeding where the court of common pleas is limited solely to enforcing the foreign discovery order.

A subpoena was issued by our clerk of courts on March 31, 1999, in accordance with R.C. 2319.09, which states that "witnesses may be compelled to appear and testify in the same manner and *by the same process and proceedings as are employed for the purpose of taking testimony in proceedings pending in this state.*" (Emphasis added.) This means to me that once a foreign court has issued the proper commission or mandate authorizing the foreign deposition of a non-party witness, our clerk of courts may issue a subpoena (with or without *duces tecum*) under our Civ.R. 45 to compel testimony and/or the production of documents. That was done in the instant case on March 31, 1999. Thus, the subpoena was issued by our process on a nonparty witness to implement the order of the District of Columbia Superior Court pursuant to R.C. 2319.09.

I am not prepared to say, as the majority apparently is, that in such circumstance the courts of this state are powerless to ever quash, issue protective orders, or modify the scope of our own subpoena. Indeed, our Civ.R. 45(C)(3) states: "On timely motion the court from which the subpoena was issued shall quash or modify the subpoena." Since it is our own writ that compels the non-party's attendance, we certainly have an interest in its scope and enforcement. If the nonparty witness refused to attend or to answer questions we would certainly feel obliged, and properly so, to enforce the writ. By the same token, we should have correlative power to excuse or modify. Certainly, the District of Columbia Superior Court cannot enforce *our* writs. This is entirely consistent with the federal counterpart Rule 45 on which our own rule is modeled. The district court which issued the subpoena at the request of a foreign tribunal has jurisdiction to quash, modify, or condition its terms. *In re Digital Equip. Corp.* (C.A.8, 1991), 949 F.2d 228, 231; *In re Sealed Case* (C.A.D.C., 1998), 141 F.3d 337, 342–343.

Notwithstanding the foregoing, I heartily concur with the majority to the extent that "principles of comity and full faith and credit prohibit Ohio courts from countermanding otherwise valid discovery orders issued by foreign courts." Since we perceive the District of Columbia Superior Court's orders to be valid discovery orders, we see no reason to interfere. However, it is not to say that the trial court is without jurisdiction to rule on motions to quash or for protective orders in the proper case.